## JOHN S. STEVENS v. PHILA. BALL-CLUB.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued April 9, 1891—Decided April 27, 1891.

The note, negotiable in form, of a limited partnership (organized under
the act of June 2, 1874, P. L. 271), executed by its treasurer duly
authorized, is negotiable in character, though bearing the impress of a
device purporting to be the seal of the association, but unattested.*

Before PAXSON, C. J., GREEN, CLARK, MCCOLLUM and
MITCHELL, JJ.

No. 228 January Term 1891, Sup. Ct.; court below, No. 617
September Term 1887, C. P. No. 4.

On September 30, 1887, John S. Stevens brought assumpsit
against the Philadelphia Ball-Club, Limited, filing a statement
of claim to recover upon the following note:

$5,000.                    PHILADELPHIA, July 15, 1887.

Two months after date we promise to pay to the order of
John I. Rogers, treasurer, five thousand dollars at Columbian
Bank, without defalcation, value received.

[Indorsed]     PHILADELPHIA BALL-CLUB, Limited.
JOHN I. ROGERS, Treasurer.     JOHN I. ROGERS, Treasurer.

On the left-hand end of the note, over the body of the
writing, was a circular device stamped in the paper, containing
the words "Philadelphia Ball-Club, Limited; organized No-
vember 1, 1882."

The defendant pleaded non-assumpsit, payment with leave
and set-off.

On March 11, 1888, by writing filed, the cause was referred
to *Mr. J. Levering Jones*, as referee, under the act of May 14,
1874, P. L. 166; and, on July 14, 1890, the referee reported
as follows:

---

* For the right to adopt and use a common seal, see § 1, act of Feb-
ruary 18, 1875, P. L. 3.

Referee's Report.

### FINDINGS OF FACT.

The Philadelphia Ball-Club, Limited, became a depositor in the Columbian Bank about 1883. Early in 1886, they began the erection of a large pavilion of brick and iron, near Broad and Huntingdon streets, Philadelphia. At this time they had about $30,000 on deposit in the bank. It was foreseen by the managers of the club that this sum would be insufficient for their purposes, and application was made to the board of directors of the bank for such a loan as might be needed, in addition to the deposits already in bank, to construct the building mentioned. The subject was finally considered by the board at its last meeting in November, 1886. At that meeting, the plaintiff, John S. Stevens, a director of the bank, was present; also, John I. Rogers, treasurer of the Philadelphia Ball-Club, Limited, also a director of the bank. Mr. Rogers explained to the directors the resources of the club, and asked the board to authorize the president to make the necessary loans, without his applying to the board every time it became necessary to have a note discounted. The president, while satisfied with the security, objected to the obligations of a corporation, because their notes, being under seal, were objectionable to the banks, which did not like to take them. To this, Mr. Rogers replied that the ball-club did not want the banks to take its obligations, but that they proposed to pledge their deposits for the payment of their notes. No further conversation was had on the subject. The entire subject was referred to the president with power to act.

On November 3, 1886, the ball-club passed a resolution, "that the board of managers be authorized and directed to borrow, either in one or several amounts, sufficient money not exceeding in the aggregate $25,000, at lawful rates of interest, . . . . . and to secure payment of the same by note, judgment note, bond, or otherwise." On January 5, 1887, the ball-club passed a resolution that, "the chairman and treasurer be directed to execute the proper promissory notes for the instalments borrowed, and secure the same with a judgment note for the whole amount, $25,000."

On January 5, 1887, a judgment note for $25,000 was given by the Philadelphia club to the Columbian Bank, for the purpose of securing such loans as might be made to them by the

Referee's Report.

bank. In January, they borrowed $5,000 ; in February, $10,000 ; in March, $5,000.   Each of these sums was on a four-months note.   As the notes became due, each was paid in whole or in part, or a renewal note given.   One of these notes was for $5,000, and given by the ball-club to the Columbian Bank March 12, 1887.   It was signed by the president and treasurer, and the seal of the corporation was impressed upon it.   It matured July 12–15, 1887.

On June 15, 1887, the bank gave John S. Stevens the note of the ball-club last above referred to, receiving a loan of $5,000 from him.

On July 15, 1887, the deposit of the ball-club was insufficient to meet their maturing obligation, and they, upon the request of the bank, gave a renewal note at two months, in place of the last-mentioned note, which had been transferred to John S. Stevens.   The old note was surrendered by Stevens, and delivered to the Philadelphia Ball-Club, the renewal note handed to Stevens with other collateral and together with a demand note of the Columbian Bank.   The renewal note was signed only by the treasurer, the president being absent.   The corporate seal was impressed upon the face of the note.   The note in form was as follows :

"$5,000.                    PHILADELPHIA, July 15, 1887.

Two months after date we promise to pay to the order of John I. Rogers, treasurer, five thousand dollars at Columbian Bank, without defalcation, value received.

[Signed] PHILADELPHIA BALL-CLUB, Lim.

JOHN I. ROGERS, Treas.

[SEAL OF PHILADELPHIA BALL-CLUB, Lim.]

[Indorsed]

JOHN I. ROGERS, Treas."

The absence of the signature of the president is not to be considered.   That informality it is agreed shall not affect in any way the legality of the instrument, the treasurer having been authorized to sign it.

On July 29, 1887, the Columbian Bank failed; at that time the club had to its credit $6,061.44.   This balance was subsequently reduced to $3,500, the present apparent balance to the credit of the ball-club.   When the note fell due, the ball-club tendered a check on the assignees of the Columbian Bank,

in payment of the note held by Stevens. This was declined and suit brought.

## CONCLUSIONS OF LAW.

The principal questions for determination in this cause may be stated as follows: Is the promissory note of a corporation with the unattested impression of the corporate seal on it, with all the characteristics of negotiability embraced in it, a negotiable instrument? Was there any circumstance connected with the making of the note, which is the basis of this controversy, rendering it non-negotiable?

John S. Stevens, the plaintiff, became the holder of the note in question, for a valuable consideration, without notice of any equity or understanding between the maker or payee that might abridge his rights. It was not taken as collateral security for an antecedent debt. There was a direct loan on the original note. The renewal note was a mere substitute to protect the same debt; when it was given the original note was surrendered. The two notes were therefore connected with and relate to the original transaction, which was a direct loan upon the security of the first note. The note was given by the base-ball club to the Columbian Bank for money advanced by them. It was given to secure money to be used for the general purposes of the corporation.

A corporation has implied power to borrow money to carry on any of the objects for which it is created, and has incidental powers to give security therefor: Orr v. Insurance Co., 114 Pa. 387. The making of a negotiable promissory note by the base-ball club was therefore fully within the scope of its powers.

In this country there can be no substantial doubt that the general principle prevails, that a note of this character is a negotiable note. The case of Bank v. Railroad Co., 5 S. C. 157, was one in which the suit was brought upon a note substantially the same as in this case. It was there held that a note of a corporation signed by its treasurer may be negotiable, although the corporate seal is attached. The court said: " The only feature of this note that is referred to as importing an intent to create an obligation under seal, is the impression of the seal of the corporation on its face. The note would be perfect without this impression, being signed by the proper officer of the corporation. It is in the ordinary form of a negotiable

promissory note, with nothing beyond the mere presence of
the seal itself to indicate an intention to give it any other char-
acter.   The seal of the corporation is not in itself conclusive
of an intent to make a specialty.   It is quite appropriate as a
means of evidencing the assent of the corporation to be bound
by a simple contract as by a specialty."

In Jones on Railway Securities, § 311, the law is stated as
follows:  "Ordinary promissory notes and other instruments
made without sealing, when issued by corporations are not infre-
quently issued under the corporate seal.   The seal in such case
is practically without effect.   It does not affect the negotia-
bility or the validity of the instrument:"  Connecticut Ins. Co.
v. Railroad Co., 41 Barb. 9;  Halford v. Railroad Co., 15 Q. B.
442;  Aggs v. Nicholson, 1 H. & N. 165;  Goodwin v. Roberts,
L. R. 10 Exch. 337;  General Estates Co., L. R. 3 Ch. D. 758.

In Waterman on Corporations, 319 (1888), it is laid down:
"If a promissory note made by a corporation be attested by its
officers with the corporate seal, which is not usual, the nego-
tiable character of the note is not thereby destroyed:"  Bank
v. Railroad Co., 5 Rich. 156.   In Morawetz on Corp., § 341, it
is further said:  "It is still the custom to affix the corporate
seal to many classes of contracts, which were formerly required
to be under seal but which to-day may be executed without the
seal.   It seems that a contract having the corporate seal affixed
must always be declared upon, at common law, as a bond or
contract under seal.   But it is well settled that promissory
notes issued by corporations do not lose their qualities as nego-
tiable instruments, merely because they were sealed with the
corporate seal."

One of the latest definitions of the law, compactly stated,
may be found in Tiedeman on Commercial Paper, § 117 (1889):
"The general rule of the law of commercial paper is that it
must not be sealed, in order to be negotiable;  but, according to
the early common-law rule, a corporation could not make a
lawful, binding contract, except under its corporate seal.   Fol-
lowing the general rule that the seal destroyed the negotia-
bility of the instrument, it was formerly held that any contract
under the corporate seal must at common law be declared upon
as a bond or contract under seal.   But it is now generally held,
first, that a corporation may make any contract or execute any

legal instrument without using its corporate seal, in all cases in which this may be done by an individual; and, secondly, that if a seal is used by a corporation, in the execution of what would otherwise be a negotiable instrument, the use of the seal will not destroy the negotiable character of the paper."

The foregoing quotations have been made without direct citations from the various cases bearing upon the point. They sufficiently show a gradual change in the principles of the law, and in expression crystallize the transition which has taken place.

It was urged by the defendants that the law of Pennsylvania, as regards the effect of a seal upon a promissory note issued by a corporation, is different from the law above stated; but such a distinction is not now admitted by courts of other states, in considering the question, however the question may have been formerly regarded, on account of the discussion in Diamond v. Lawrence Co., 37 Pa. 353.

The opinion in Hopkins v. Railroad Co., 3 W. & S. 410, that the note of a company, though in its form strictly negotiable, yet if it be attested by the seal of the corporation, it is a specialty, and in an action upon it by the holder it is subject to the defence of a want of consideration, and the decision of Chief Justice GIBSON in Frevall v. Fitch, 5 Wh. 330, that a note bearing the corporate seal of a bank on its face, though framed in other respects as a promissory note, is a specialty, were only expressive of the law as it was understood at that time; and it was undoubtedly upon the expression in these two decisions, and in recognition of the law as it was then understood, that Judge SHARSWOOD, in his lectures on commercial law, reiterated the same general rule in 1856. All the later authorities in Pennsylvania display a marked tendency to modify, or absolutely abrogate, the old rule, and to treat corporate instruments that would otherwise be negotiable if not under seal, as negotiable, although that incidental feature may be attached to them.

In Mason v. Frick, 105 Pa. 162, it was held that coupon bonds payable to the bearer, lawfully issued and sold by a private corporation, possessed incidents of negotiable paper. It is therein said: " The negotiability of the bond is to be decided by an inspection of its form, and the well known purposes for

which it was issued. . . . . It is true that the bond is under seal, and the payment thereof secured by a first-lien mortgage on the works of the company. As, however, it is payable to the bearer, the manifest intention was to make it transferable by delivery. Presumptively, the bonds were issued to raise money to construct the works of the company. It was a private corporation, and it put these bonds in the market for sale. The clear intent of the maker was that they should pass as negotiable paper. With the language of negotiability on its face, did the seal impressed thereon destroy the negotiability of the bond? We are not dealing with the case of an obligation under seal between individuals; nor with the case of an individual bond of a corporation executed to secure the performance of a contract to do one specific act; but with the case of a corporation which issued two hundred and fifty of like bonds to borrow money, and put them on the market for sale."

"It is held by the Supreme Court of the United States and by the courts of our sister states, that the bond of a corporation of this form and character is negotiable, and that the mere addition of the seal of the corporation which issued it, does not destroy its negotiability. So, where the name of the payee is left blank, the holder may fill in his own name, and bring suit on the instrument: Chapin v. Railroad, 8 Gray 575; White v. Railroad, 21 How. 575. The bond of a railroad company to secure the payment of money, although under seal, when made payable to bearer or to order is regarded as invested with all the attributes of negotiable paper: Zabriskie v. Railroad Co., 23 How. 381; Winfield v. Hudson, 28 N. J. L. 255; Murray v. Lardner, 2 Wall. 120; Morris Canal Co. v. Lewis, 12 N. J. Eq. 323. . . . . The early decisions of our own state do not recognize this rule to its full extent. The later cases, however, have been gradually approaching a conclusion in harmony with the decisions elsewhere."

A review follows, from the various cases from Frevall v. Fitch, 5 Wh. 325, until the present time, showing that the earlier cases had been substantially modified or overruled; and, in speaking further upon the case before them, language is employed which clearly indicates the intention to make the law of Pennsylvania harmonize with that of other states, in reference to negotiable instruments of corporations incidentally issued

under seal. It is said, page 169: "We adopt the conclusion that a bond, of the form of the one now in question, must now be held in Pennsylvania, as elsewhere, to possess the incidents of negotiable paper. The defendant having taken this bond in good faith, and having paid a valuable consideration therefor, acquired a good title: Phelan v. Moss, 67 Pa. 59; McSparran v. Neeley, 91 Pa. 17."

We need not enter into the consideration of any refined or artificial distinctions as between the negotiability of a bond under seal, issued for the purpose of borrowing money thereon, and the negotiability of an ordinary promissory note under seal, issued for the same object, the language of both importing negotiability. The expressions of our courts now indicate a substantial uniformity with the courts of all the other states, and there has been an evident aim to make them agree. The custom of merchants and the undoubted law has been accurately defined by the text books. The absence of an individual case in Pennsylvania may well be ascribed to the general recognition of the principle enunciated, that a promissory note issued by a corporation under seal, in form negotiable, is not open to any defence to the maker in the hands of an innocent holder for value.

It cannot be doubted that it was the intention of the ball-club to issue an ordinary promissory note, and that this meant a negotiable instrument. This is evident from the language of the resolution passed by the ball-club on January 5, 1887, that, "The chairman and treasurer be directed to execute the proper promissory notes for the instalments borrowed, and secure the same with a judgment note for the whole amount, $25,000."

It was urged on behalf of the defendants, that a remark of John I. Rogers to the president of the Columbian Bank, at the time negotiations for a loan were being carried on, in November, 1886, indicated an intention to give a non-negotiable instrument. We cannot attach such a meaning to the remark, in view of the language of the resolution passed by the ball-club and before quoted. In any event, if this note is negotiable, the defendant is estopped from interposing as a defence to recovery upon it, a mere conversation which took place between the representative of the defendant, the ball-club, and

the payee, the Columbian Bank; a conversation which resulted in no distinct agreement, and was substantially no more than an incidental observation in the negotiations for the arrangement of the loan.

The question of a special assignment of the deposits made by the Philadelphia Ball-Club, Limited, in the Columbian Bank, as security for the notes given for it, need not be considered in this connection. If the rule of law that has been laid down is sound, such a fact could not affect the rights of plaintiff herein. We find nothing in the evidence relieving the defendants from liability. To hold the note non-negotiable would, we think, be inequitable and a step backwark in the progressive movement of commercial and of corporation law.

I, therefore, find this case in favor of the plaintiff and against the defendants in the sum of $5,814.50, being the sum of $5,000, with interest thereon from September 18, 1887, and costs of protest, and direct judgment to be entered in this sum, in due course after the filing of this report.

—To the foregoing report, the defendants filed exceptions, alleging that the referee erred:

2. In holding that, although the note would be perfect as a negotiable instrument without the seal, yet the addition of the seal did not affect the negotiability of the instrument.[1]

3. In holding that the instrument sued on was a negotiable instrument.[2]

4. In not holding that the addition of the seal rebutted the presumption of negotiability raised by the phraseology and form of the note, and thus required the plaintiff to prove affirmatively that the "intention of the parties" was to make the note negotiable.[3]

6. In finding for the plaintiff in the amount of $5,853.33.[4]

On December 20, 1890, said exceptions having been argued, an order was made dismissing the exceptions and comfirming the referee's report, no opinion being filed. Thereupon the defendants took this appeal, specifying that the court erred:

1–4. In dismissing the said exceptions.[1 to 4]

*Mr. John I. Rogers* and *Mr. Geo. Tucker Bispham*, for the appellants.

Counsel cited: (1) Hopkins v. Railroad Co., 3 W. & S. 410;

Frevall v. Fitch, 5 Wh. 330. (2) Maloney v. Bruce, 94 Pa. 252; Oak Ridge Coal Co. v. Rogers, 108 Pa. 150; Eliot v. Himrod, 108 Pa. 580; Tidewater Pipe Co. v. Kitchenman, 108 Pa. 606; Hill v. Stetler, 127 Pa. 161. (3) Crouch v. Credit Foncier, L. R. 8 Q. B. 374; 14 Am. L. Reg., N. S., 162; Lewis on Stocks, etc., 64–83; Jones on Corp. Bonds, ed. 1890, § 185.

*Mr. John G. Johnson* (with him *Mr. Frank P. Prichard*), for the appellee.

Counsel cited: (1) Oak Ridge Coal Co. v. Rogers, 108 Pa. 147; Hill v. Stetler, 127 Pa. 145. (2) White v. Railroad Co., 21 How. 575, 577; Mercer v. Hackett, 1 Wall. 83, 95; Brainerd v. Railroad Co., 25 N. Y. 496; Kerr v. Corry, 105 Pa. 282; Mason v. Frick, 105 Pa. 162. (3) Bank v. Railroad Co., 5 S. C. 156; Jackson v. Myers, 43 Md. 452; Muth v. Dolfield, 43 Md. 466. (4) Goodwin v. Roberts, L. R. 10 Exch. 337–346; General Estates Co., L. R. 3 Ch. App. 758; Imperial Land Co., L. R. 11 Eq. 478. (5) Green's Brice's Ultra Vires, 2d Am. ed., 256; Morawetz on Corp., § 341; Jones on Railway Sec., § 311; Tiedeman on Com. Paper, § 117; 4 Lawson on Rights, etc., § 1456.

PER CURIAM:

The learned referee and the court below held that the note in question was negotiable. That it was so in form is not disputed. It was signed by the treasurer, and his authority to do so was expressly found by the referee. It was urged, however, that the fact that the seal of the Philadelphia Ball-Club, Limited, was attached, destroyed its negotiability.

The association was organized under the act of 1874, providing for the creation of limited partnerships. Such associations were referred to, in Oak Ridge Coal Co. v. Rogers, 108 Pa. 147, as quasi corporations. They are certainly artificial bodies, not natural persons. Whatever may be the character of such associations, there is nothing in the act of 1874 which requires or authorizes them to use a common seal, as in the case of a corporation, nor is there anything to show that it had ever adopted a seal. The resolution authorizing the issue of the note in suit is as follows: "The chairman and treasurer be directed to execute the proper promissory notes for the instalments borrowed, and secure the same with a judgment note for the whole amount,

$25,000." Here was authority to issue proper promissory notes, which means, in the usual form of such instruments. There is not a word about a seal, and the seal appended was evidently not that of the officer who signed the paper, nor was it placed opposite his name. It was on the left-hand side of the note, over the body of the writing, and was a stamped device. As the association had no common seal, so far as the case shows, and as there was no instruction or authority to affix it, we must regard it as surplusage, and not as interfering with the clear intention to make the instrument negotiable.

We need not discuss the question of the effect of a seal upon instruments issued by a corporation, further than to say that in such cases the question of their negotiability depends to a large extent upon the purpose for which they were issued. As was said in Mason v. Frick, 105 Pa. 162, in regard to coupon bonds: "Presumptively the bonds were issued to raise money to construct the works of the company. It was a private corporation, and it put these bonds in the market for sale. The clear intent of the maker was that they should pass as negotiable paper." In the case in hand, we think the intent equally clear that the note was intended by the maker to be negotiable. Even if we treat the device referred to as a seal, it does not show a contrary intent, nor destroy the negotiability of the note.

Judgment affirmed.