## Whitney et al. *v.* Backus, Appellant.

149      29
f 33 SC ⁴532

*Trespass quare clausum fregit—Act of March 29, 1824—Treble damages for cutting timber—When defendant liable.*

In order to hold a defendant liable for treble damages for cutting timber under the act of March 29, 1824, it is not necessary to prove that he was actually seen in the act of cutting the timber; if he authorized or ratified the trespass, it is sufficient.

*Limited partnership—Torts—Liability of members and officers.*

A limited partnership under the act of June 2, 1874, is liable for the tortious acts which it expressly or impliedly authorizes. But its members and officers are not personally responsible for such acts, unless they participate in them.

In this case the appellant was the superintendent of the company. The evidence showed that the cutting of the timber complained of was done for the company on the order of its foreman. It failed to show the nature and extent of appellant's supervision of the business of the company, that by word or act he participated in or ratified the trespass, that he was on the premises at the time of it, or knew of its commission: *Held*, that it was error to submit his liability to the jury.

*Pleading—Trespass—Effect of pleas of not guilty and liberum tenementum.*

The pleas of not guilty and liberum tenementum in an action of trespass, do not admit either the possession or the trespass alleged in the declaration, but put the plaintiff on proof of them.

Argued April 28, 1891. Appeal, No. 362, Jan. T., 1891, by Andrew Backus, one of the defendants, from judgment of

C. P. Erie Co., Nov. T., 1885, No. 116, on verdict for plaintiffs, George M. Whitney et al. Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass quare clausum fregit to recover treble damages for cutting timber, under the act of March 29, 1824.

The summons was issued against the defendants "doing business as the Penn Lumber Company, Limited," and served personally on each of them. All the defendants pleaded not guilty and liberum tenementum. The Penn Lumber Company, Limited, was organized under the act of June 2, 1874, and its supplements. At the trial the court by GUNNISON, P. J., refused plaintiff's request to charge that defendants were liable as general partners for torts committed by the firm in the prosecution of the firm business. The material facts appear by the opinion of the Supreme Court.

Plaintiffs' sixth point, affirmed, was as follows :

" 6. That it is not necessary to prove by direct evidence that the defendants were seen in the act of cutting the timber, but if the jury find from all the circumstances that they authorized or ratified the trespasses complained of, then that would make them legally liable to the same extent as if they had individually committed the alleged trespasses." [1]

Defendant's third and fifth points, refused, and defendant's sixth point with the answer thereto were as follows :

" 3. That if they find that L. Leavitt, on or about the year 1837, purchased the property known as the Leavitt Lot, including the land in question, and settled thereon, receiving a deed therefor from A. J. Culbertson in 1839, and continued to reside thereon for six or seven years, cleared land, planted fruit trees and made other improvements, exercising ownership over the identical land in question, that such purchase and occupation, followed by a series of conveyances to the present owners, constitutes a good title as against the plaintiffs having merely a paper title to wild land without possession, and the plaintiffs cannot recover." [2]

" 5. That under all the evidence in this case the plaintiffs cannot recover and their verdict must be for the defendants." [3]

" 6. The evidence in this case clearly showing that Lorett

Leavitt came upon the land known as the Leavitt Lot in 1837, receiving a deed therefor in 1839, including the land in question; that he made valuable improvements and lived upon the land six or seven years, that the part of this land in Erie county was assessed to said Leavitt from 1839 to 1854, when it was sold as his property for taxes ; that by a series of assignments on the Leavitt deed the same land was transferred to J. W. Clark in 1851 ; that it was assessed to said Clark from 1853 to 1858, when it was again sold for taxes as the property of said Clark; that both the said tax titles, also a quitclaim deed from said Leavitt, having come down by a series of regular conveyances to the defendants in this case, also a patent from the commonwealth taken in connection with the fact of the defendant's deed and survey from Scott and Tracy and their occupation of the land, as shown by the evidence, constitutes in law a possession, with color of title, and the action of trespass will not lie."

*Answer :*

" The facts recited with the article to the Penn Lumber Company, Limited, are evidence of possession by the Penn Lumber Company, Limited, under color of title, which, if found by the jury, is a complete defence to this action." [4]

The court charged, inter alia, as follows :

" Right here it is proper to instruct you that, so far as the evidence shows, none of these defendants actually participated in the cutting down of any of the timber, and there is no evidence that any of the defendants, except Mr. Backus, authorized the cutting of it down; so that so far as any of the defendants, excepting Mr. Backus, are concerned, your verdict must be for them. That is, you cannot find a verdict against any of them but Mr. Backus.

" Now, the evidence against Mr. Backus is not direct evidence. There is no direct and positive evidence that he authorized it. There is some evidence, however, which it is proper to submit to you, from which you might infer, perhaps, that he authorized it. It is very slight evidence, of course, but still it is some evidence, and is sufficient to submit to you. It appears that in 1883 he was the superintendent of the Penn Lumber Company, and that, from that time on until June, 1885, when Mr. Pierce took the position, and during which time this

timber was cut, if the evidence is to be believed, that he was generally on the property and acted as superintendent. Now, the evidence shows that the Penn Lumber Company directed this to be cut; did they do it through Mr. Backus? Was he the man who authorized it? That is another question for you to determine, and you must determine that in the affirmative before you can find a verdict against him. He was there part of the time, he says; but he does not say, nor does any other witness say, that he was there at the time the timber was cut. But he being the superintendent, and the timber being cut by order of the Penn Lumber Company, he being there a portion of the time, it is for you to say whether he authorized it to be done or not." [5]

*Errors assigned,* were (1) affirming plaintiffs' sixth point; (2, 3) refusing defendants' third and fifth points; (4) not affirming their sixth point; (5) the portion of the charge as above, quoting the points, answers and charge.

*Joseph M. Force,* with him *Henry C. Yard,* for appellant.

*E. A. Walling,* with him *John P. Vincent,* for appellees.

OPINION BY MR. JUSTICE McCOLLUM, April 25, 1892:

This was an action of trespass quare clausum fregit brought by George M. Whitney and Lucinda M. Whitney against Alfred Short, William C. Culbertson, Roscoe A. Davidson, Andrew M. Backus, and Edwin J. Dodge, doing business as the Penn Lumber Co., Limited, to recover the damages allowed by § 3 of the act of March 29, 1824, Pur. Dig. 1635, for cutting timber trees without the consent of the owner. It resulted on the trial in the court below in a verdict and judgment of $100 against Andrew M. Backus, who is the appellant here.

The instruction complained of in the first specification of error is in accord with well settled principles applicable to cases of this kind. McCloskey v. Powell, 123 Pa. 62, and 138 Pa. 383, is the latest case on the subject which we now recall, and it sufficiently vindicates the affirmance of the appellee's sixth point. We fail to discover error in the refusal of the appellant's third point. There was no evidence that A. J. Culbertson from whom Lorett Leavitt received a deed in 1839, had title to the land in dispute, or possession of it, at any time. The possession of Leavitt, as described by his son, and the conveyances

mentioned in the point, were not sufficient to constitute a good title in the Penn Lumber Co., Limited. His possession was not clearly defined, and there was no satisfactory evidence that it was maintained under these conveyances. The remaining specifications raise the question whether it was the duty of the court, on the whole evidence, to instruct the jury to find for the defendants. The appellant contends that it was, and the grounds of his contention are : 1, that the Penn Lumber Co., Limited, was in possession of the land under color of title ; and 2, that there was no evidence to justify an inference that the defendants participated in the alleged trespass, or by word or act, before or after its commission, became personally liable for it. In reference to the first ground the learned judge instructed the jury that if the Penn Lumber Co. was in possession under color of title, the action could not be maintained, and in explanation said : " Possession under color of title means possession under a bona fide claim of title." This instruction was not excepted to, and is not assigned as error. But the learned judge refused to say that the facts recited in the appellant's sixth point were clearly proven. He could not well do otherwise, because the credibility of the testimony relied on by the appellant to establish these facts, and the good faith of the claim under which the alleged possession was taken and maintained, were for the jury. The claim that the evidence was not sufficient to show that the defendants participated in the trespass, or were personally liable for it, was sustained as to all of them except the appellant. It is evident from the instructions to the jury that the learned judge thought something more than ownership of shares in a joint stock association was necessary to subject a member of it to personal liability for its torts, and in this view we concur.

A joint stock association, organized and managed in strict compliance with the provisions of the act of June 2, 1874, P. L. 271, and the supplements thereto, has many of the qualities of a corporation. It has an association name, in which it must sue and be sued, and take, hold, and convey the real estate purchased and sold by it. Its operations are carried on through officers or agents, and it is responsible for their torts committed within the scope of their employment and in the prosecution of its business. The liability of its members for

its acts and engagements is limited to their contributions or subscriptions to its capital, and their interests in it are personal estate.      Unlike an ordinary partnership, and like a corporation, it is an artificial person, and survives the death of a member or a sale of his interest.      Such an association is answerable for the tortious acts which it expressly or impliedly authorizes, but its members are not personally responsible for them as a consequence of their contributions to its capital.      It follows that, when a member of the association is sued for its trespass, it should appear that he was a participant in the tortious act complained of.      It is not enough in such case to show that he was then an officer or agent of the association.      If inferences are relied on to connect him with the trespass, they must be such as naturally and reasonably arise from the facts proven or admitted.      An inference from an inference is not admissible. Applying these principles to the case at bar, we examine the evidence from which the jury was allowed to infer that the appellant was a trespasser.      It is brief, and we quote the whole of it.

Warren Cole, a witness for the appellees, testified as follows: " Q. State whether or not, at one time, you were superintendent, or what position you held with the Penn Lumber Co.?      A. I was foreman of the works.      Q. From what time on?      A. From the first of March, 1883 ; I was there five years.      Q. What do you know about who cut the timber, and at whose order it was cut, east of the creek?      A. I cut it myself; I ordered it cut.      Q. For whom?      A. The Penn Lumber Co."

When he was called by the appellant, and in answer to the question, " you were superintendent of this property for a time before Mr. Pierce ? " he said, " Not exactly superintendent; I was foreman there.      When I first went there Mr. Backus was superintendent."      " Q. When were you superintendent there ? A. I went there March 15, 1883."

The appellant testified, on cross-examination by the appellees, as follows : " Q. You were a member of the Penn Lumber Co., one of the firm ?      A. Yes, sir.      Q. Until Mr. Pierce went there you were up there most of the time ?      A. Yes, sir. Q. You had charge until he went there in 1883, in June ? A. Not all the time.      Generally I had, when I could be there."

This is all the testimony pertinent to our question. It clearly shows that the timber was cut for the Penn Lumber Co. on the order of its foreman. It fails to show the nature and extent of the appellant's supervision of the business of the company, that by word or act he participated in or ratified the trespass, that he was on the premises at the time of it, or knew of its commission. The verdict therefore rests not on an inference, but on a guess, which is certainly not a proper factor in fixing the responsibility for a trespass so highly penal in its consequences. It was error to allow the jury to make the guess.

It is suggested that an admission of the trespass is contained in the pleadings. We do not think so. The pleas of not guilty and liberum tenementum put the plaintiffs on proof of their possession, and of the trespass described in their declaration.

The 1st, 2d and 4th specifications of error are overruled, and the 3d and 5th are sustained.

Judgment reversed.