YOUNGSTOWN COKE CO., Limited, v. ANDREWS BROS. CO.

(Circuit Court, N. D. Ohio, E. D. April 14, 1897.)

No. 5,284.

FEDERAL COURTS—DIVERSE CITIZENSHIP—QUASI CORPORATIONS.

Limited partnership associations, under the laws of Pennsylvania, which are governed by managers or directors, and may sue and be sued by their association names, have all the essential characteristics of corporations, and may sue in a federal court of another state, irrespective of the citizenship of their individual members.

This was an action at law brought by the Youngstown Coke Company, Limited, against the Andrews Bros. Company. On motion for a new trial.

White, Johnson, McCreslin & Cannon, for plaintiff.
Thos. W. Sanderson and L. A. Russell, for defendant.

SAGE, District Judge. Upon the trial, the intervention of a jury having been waived, and the action submitted to the court, a judgment was directed in favor of the plaintiff for the sum of $9,519.16. The defendant now moves for a new trial.

The plaintiff is a limited partnership association, under the laws of Pennsylvania. By article 16, § 13, of the constitution of that state, the term "corporation," as used in the article, is to be con-

strued as including all joint-stock companies or associations having any of the powers or privileges of corporations not possessed by individuals or partnerships. The status of such associations has been .repeatedly passed upon by the supreme court of Pennsylvania.

In Coal Co. v. Rogers, 108 Pa. St. 150, the plaintiff being a partnership association, limited, Chief Justice Mercur, delivering the opinion of the court, declared that, although such an association had many of the characteristics of a corporation, it was not technically a corporation. It could sue and be sued in its association name only. Its capital was alone liable for its debts. The omission of the word "Limited" might make each person participating in the association personally liable for any indebtedness arising in the transaction of its business. There is a provision of the act under which such an association is organized for winding up its business and for the distribution of its property. He says:

"It may not be improper to call such an association a quasi corporation. If not a corporation, it is a person. It is either a natural or artificial person. There is no intermediate place for it to occupy, no other name for it to bear. It cannot claim an existence which exempts it from all liabilities imposed on either class of persons."

The question in that case was whether the association was liable upon an action of trespass, and the holding affirmed the liability.

The same court, in Hill v. Stetler, 127 Pa. St. 145, 13 Atl. 306, and 17 Atl. 887, held that a limited partnership organized under the act of 1874 was a joint-stock association, "having some of the characteristics of a partnership, and some of a corporation." In Pennsylvania the law provides for limited partnerships, and for limited partnership associations. The plaintiff in that case was a limited partnership. In this case the plaintiff is a limited partnership association.

In MacGeorge v. Manufacturing Co., 141 Pa. St. 575, 21 Atl. 671, the judge below held that:

"The points of similarity between partnership associations, limited, and corporations, are that both are permitted to have, and attest some of their acts by, a seal; are governed by managers or directors; may sue and be sued by their association or corporation name; and the members or stockholders are not liable individually for the debts of the concern, as general partners are. The chief point of difference between them is that, while a corporation cannot refuse to permit a transfer on its books of shares of its stock to any purchaser thereof, a partnership association, limited, can, except according to its rules."

The judgment below was affirmed by a per curiam opinion, in which the point above stated was not discussed.

In Stevens v. Ball Club, 142 Pa. St. 52, 21 Atl. 797, said defendant being an association organized under the act of 1874 providing for the creation of limited partnerships, it was held that the club was a quasi corporation.

The court, in Laflin & Rand Co. v. Steytler, 146 Pa. St. 439, 23 Atl. 215, reviewed the course of legislation with reference to limited partnership associations, and arrived at the conclusion that

the act of 1874 with reference to the formation of such associations, under which the defendants in that case were organized, created a new kind of artificial persons, "standing between a limited partnership, as previously known, and a corporation, and partaking of the attributes of each."

In Whitney v. Backus, 149 Pa. St. 29, 24 Atl. 51, the action was in trespass quare clausum fregit against the members of the Penn Lumber Company, Limited. The summons was served personally upon each of the members. They all pleaded not guilty, and liberum tenementum. The court held that the company was liable for the tortious acts which it expressly or impliedly authorized, but that its members and officers were not personally responsible for such acts, unless they participated in them. The court said that such an association had many of the qualities of a corporation:

"It has an association name, in which it must sue and be sued, and take, hold, and convey the real estate purchased and sold by it. Its operations are carried on through officers or agents, and it is responsible for their torts committed within the scope of their employment, and in the prosecution of its business. The liabilities of its members for its acts and engagements are limited to their contributions or subscriptions to its capital, and their interests in it are personal estate. Unlike an ordinary partnership, and unlike a corporation, it is an artificial person, and survives the death of a member, or a sale of his interests. Such an association is answerable for the tortious acts which it expressly or impliedly authorizes, but its members are not personally responsible for them, as a consequence of their contributions to its capital."

The court held that it was not enough, in such a case, to show that the person sued was an officer or agent of the association, but that it should appear that he was a participant in the tortious act complained of.

The supreme court of the United States, in Secombe v. Railroad Co., 23 Wall. 108, was called upon to decide whether the defendant company was a corporation. The territorial legislature of Minnesota had incorporated the railroad company under the name then given to it. In 1858 the territory became a state, and made a constitution which prohibited the formation of corporations by special act. About the same time, by constitutional amendment, the state authorized the company above referred to, as incorporated by the territorial legislature in 1856, to mortgage its roads, franchises, etc., to the state, as security for the payment of certain bonds. The railroad company made the mortgage, but defaulted on the bonds; and in 1860 the governor, under a special act of the legislature, foreclosed the mortgage, and purchased the roads and franchises in the name of the state. In 1861 the legislature, by special act, granted the roads, franchises, etc., to certain persons who had organized themselves into a company. That grant, in turn, was forfeited, according to its conditions, and in 1862 the roads were regranted to a third set of persons, organized into a new company, and called "The Minnesota Central Railroad Company." The question was whether that company was a corporation. The supreme court said that whether it was a corporation having the right to condemn land depended, of necessity, on the

laws of the state, and, if those laws had been construed by the highest court in the state in a case similar in character to the one before the supreme court, the question was relieved of all difficulty. The court held, in reference to the question whether the company had a corporate existence, that it was enough to say that the point was settled in favor of the company by the decision and reasoning of the supreme court of Minnesota.

The motion for new trial in this case is based solely upon the proposition that the court is without jurisdiction, for the reason that the plaintiff is not a corporation, and that it does not appear that the members of the plaintiff company are all citizens of the state of Pennsylvania. It is urged by counsel for the defendant that the decision in Secombe v. Railroad Co. does not apply to the case of a quasi corporation, but only to the case of a corporation pure and simple. If so, why the supreme court should have any occasion to consult, for the solution of the question, the decisions by the highest court of the state, is not clear. The very fact that those decisions are referred to as authoritative would seem to imply that the supreme court did not intend to limit its recognition of corporations as suitors to those associations which are in all respects technically within that designation. The real question in Secombe v. Railroad Co. was whether the company, which, if organized, was undoubtedly a corporation, had been legally formed under the laws of the state of Minnesota. The court said that whether the company had the rights claimed depended, of necessity, on the laws of the state which gave it existence, if it had any existence. And so here; whether the company has corporate existence must depend upon the constitution and laws of the state under which it was organized.

Yet, upon the authority of a case which will be hereinafter cited, it is at least doubtful whether the supreme court would recognize as authoritative and decisive, upon the question whether a party to an action or suit in a federal court is to be regarded as a corporation, an adjudication of the highest court of the state under whose laws it was organized. In Secombe v. Railroad Co. the question was whether the company had been legally formed, not what was its status if legally formed. Here it is conceded that the association was legally formed, and the question is, solely, what is its status, or true designation?—a question of a general nature, not necessarily depending, as we shall see, upon adjudication by the state courts.

Counsel for the defendants cite Refining Co. v. Wyman, 38 Fed. 574, decided in this district April 8, 1889. In that case, proof was offered tending to show that the plaintiff was only a limited partnership under the laws of Pennsylvania, composed of persons unknown, who held some 3,000 certificates of shares of interest in the capital of the concern, wherefore it was contended that the court had no jurisdiction. It will be noticed that that company was only a limited partnership, and not a limited partnership association, as is the plaintiff in this case. Neither the clause of the constitution of Pennsylvania, hereinbefore adverted to, nor

any of the decisions by the supreme court of that state, were cited in that decision, nor was Secombe v. Railroad Co. The objection to jurisdiction being made, the plaintiff asked leave to amend its petition, if the opinion of the court should be that it was not a corporation of Pennsylvania, and not entitled to sue as a citizen of that state, by suing in the names of the persons who constituted the organization, some half-dozen citizens of New York, New Jersey, and Pennsylvania. The court said:

"Surely, they would be entitled to this amendment, and it would rid us of all further trouble as to the jurisdiction. The court is therefore willing to rule, pro forma,—and I say that because, while I believe it to be the correct ruling, I have not had time or opportunity to give that critical study to the point which its importance deserves,—that the plaintiff, on the facts shown, is not a corporation of Pennsylvania, and therefore is not entitled to sue as such in respect to the rule of the federal courts governing their jurisdiction of controversies between citizens of different states."

The amendment was accordingly so made, and the question of jurisdiction dropped out of the case. That case, therefore, cannot be regarded as anything more than a formal adjudication, made avowedly without full examination, and based upon none of the authorities which have been cited pro and con in this case.

They cite also Carnegie, Phipps & Co. v. Hulbert (decided by the court of appeals of the Eighth circuit Oct. 31, 1892) 3 C. C. A. 391, 53 Fed. 10. There a demurrer to the complaint was sustained, and judgment rendered for the defendants, by the court below. The case was then taken by writ of error to the court of appeals, where it was argued upon its merits. But the court of appeals, through Caldwell, circuit judge, said that, upon looking into the record, it appeared that the only jurisdictional averment in the complaint relating to the citizenship of the complainant was that it was a "co-partnership organized and created by the laws of the state of Pennsylvania, and by the laws of said state of Pennsylvania authorized and empowered to sue and be sued in its co-partnership name." The court of appeals rightly decided that that averment did not show a case of which the circuit court could take jurisdiction. The allegation was that the plaintiff was a co-partnership, and not a corporation. The court said that a co-partnership was not a corporation, and could not be a citizen of a state, within the meaning of the statutes regulating the jurisdiction of the circuit court; also, that, when a co-partnership sues, the citizenship of the parties composing it must be averred, and must be such as to confer the jurisdiction. Thus, it appears that the question of jurisdiction was not argued, and that it was considered by the court solely upon the averments in the pleadings. So considered, it was rightly decided. That case is not authoritative on the question here presented.

On the other hand, the plaintiff cites Bushnell v. Park Bros. & Co. (decided by Judge Lacombe on a motion to remand) 46 Fed. 209. Upon the authority of Secombe v. Railroad Co., 23 Wall. 108, and Hill v. Stetler, above cited, he held that, for the purposes of the suit, the defendant, which was a joint-stock associa-

tion, limited, created under the Pennsylvania act of June 2, 1874, must be considered to be a Pennsylvania corporation, and as such had the right to remove. That decision is directly in point.

There is also in proof in this case a certified copy of the record in the case of Andrews Bros. Co. (the defendant in this case) against the Youngstown Coke Co., Limited (the plaintiff in this case), in the circuit court of the United States for the Western district of Pennsylvania, in which the jurisdiction of the federal court was not questioned by Judge Acheson, who decided the case, and whose opinion is part of the record. 39 Fed. 353.

It is necessary, or at least proper, in passing upon the question involved, to refer to the essential differences between a corporation and a partnership. They are very well stated by Judge Thompson in the first volume of his Commentaries on Corporations, at section 13. Among them, he cites the following particulars:

(1) Members of a corporation "may, in general, without restraint, by transferring their shares, introduce other persons in their stead; but the members of a general partnership contribute to the common enterprise not only their respective shares in the partnership capital, but also their personal skill and individual credit, and cannot, hence, retire from the partnership, and introduce other persons in their stead, without the consent of their co-partners.

"(2) The members of a general partnership are, by virtue of their status as such, agents of the partnership firm, and of each other, in all matters within the scope of the partnership business. [In a footnote it is stated that this is not a necessary incident of a partnership.] Not so the members of a corporation. They can only act about the business of the corporation in their aggregate capacity, through the agency of a committee, commonly called a 'board of directors' or 'board of trustees,' whom they have chosen to represent them, and through such other officers as this committee may appoint.

"(3) The members of a general partnership are jointly and severally liable to pay, out of their private estates, all the debts of the partnership firm. But in the United States the members of a corporation are not, in general, liable to pay any of the corporate debts, unless they have received or withheld some of the assets of the corporation, or unless they are otherwise made liable by the terms of the charter of the corporation, or by statute."

In section 14 he sets forth the differences between corporations and joint-stock companies, referring chiefly to English joint-stock companies, where the members are, in general, liable as partners:

"In the United States, however, an unincorporated joint-stock company, although it may possess a capital stock divided into shares, and transferable at the will of the holders, do business under a name indicating that it is a corporation, act through a common agency and not by its individual members, and hold its property in the name of a trustee, is deemed to be an ordinary partnership, with respect to its relations with the public, such as the manner in which it may sue and be sued, its liability to taxation, and the liability of its members to its creditors. Nonliability of members to creditors will not, of itself, however, determine whether an association is a corporation or not; since, as we shall see hereafter, the members of some American corporations are liable, as partners, to its creditors. Thus, an English joint-stock company, possessing the general incidents of an American corporation, except the nonliability of its members, and organized under acts of parliament expressly declaring that it is not a corporation, will nevertheless be deemed a corporation in this country, for the purposes of taxation."

In support of this last proposition, Oliver v. Liverpool & L. Life & Fire Ins. Co., 100 Mass. 531, is cited. That case was affirmed (10 Wall. 566) under the name of Liverpool Ins. Co. v. Massachusetts.

There the supreme court held (Justice Miller delivering the opinion of the court) that the association possessed—

"Many, if not all, the attributes generally found in corporations for pecuniary profit, which are deemed essential to their corporate character.

"(1) It has a distinctive and artificial name, by which it can make contracts.

"(2) It has a statutory provision by which it can sue and be sued in the name of one of its officers, as the representative of the whole body, which is bound by the judgment rendered in such suit.

"(3) It has provision for perpetual succession, by the tranfer and transmission of the shares of its capital stock, whereby new members are introduced in place of those who die or sell out.

"(4) Its existence as an entity apart from the shareholders is recognized by the act of parliament, which enables it to sue its shareholders, and be sued by them."

Justice Miller proceeded to dispose of the objection that the association was nothing but a partnership because its members were liable individually for the debts of the company, by remarking that the principle of the personal liability of the shareholders attaches to a very large proportion of the corporations of this country. So, also, he said that the fact that there was no provision, either in the deed of settlement or the act of parliament, for the company suing or being sued in its artificial name, did not forbid the corporate idea; that the court could see no real distinction in that respect between an act of parliament which authorized suits in the name of the Liverpool & London Fire & Life Insurance Company and that which authorized suit against that company in the name of its principal officer.

"If it can contract in the artificial name, and sue and be sued in the name of its officers on those contracts, it is, in effect, the same; for the process would have to be served on some such officer, even if the suit were in the artificial name."

With reference to the objection that the several acts of parliament cited expressly declared that such organizations should not be held to be corporations, he said that the question before the court was whether an association such as the one under consideration—

"In attempting to carry on its business in a manner which requires corporate powers under legislative sanction, can claim, in a jurisdiction foreign to the one which gave those powers, that it is only a partnership of interests. We have no hesitation in holding that, as the law of corporations is understood in this country, the association is a corporation, and that the law of Massachusetts, which only permits it to exercise its corporate functions in that state on the condition of payment of a specific tax, is no violation of the federal constitution, or of any treaty protected by said constitution."

Judge Bronson, in People v. Assessors of Watertown, 1 Hill, 620, defined a "corporation" as follows:

"A corporation aggregate is a collection of interests united in one body, under such a grant of privileges as secures a succession of members without changing the identity of the body, and constitutes the members, for the time being, an artificial person, or legal being, capable of transacting some kind of business like a natural person."

Mr. Kyd, in the first volume of his work on Corporations, at page 70, gives a definition which has been widely quoted:

"Though many things be incident to a corporation, yet, to form the complete idea of a corporation aggregate, it is sufficient to suppose it vested with the three following capacities: (1) To have perpetual succession under a special denomination, and under an artificial form; (2) to take and grant property, to contract obligations, and to sue and be sued in its corporate name, in the same manner as an individual; (3) to receive grants of privileges and immunities, and to enjoy them in common. These alone are sufficient to the essence of a corporation."

Quasi corporations, according to Mor. Priv. Corp. § 6, are "associations and government institutions possessing only a portion of the attributes which distinguish ordinary private or public corporations." He cites, in illustration, towns and other political divisions, school districts, boards of commissioners, overseers or trustees of the poor, etc., having authority to act and bring suit as united bodies, without regard to their membership for the time being; also, individual public officers having authority to sue in their official capacities upon contracts made with their predecessors in office. These are referred to as examples of quasi corporations sole. To the same effect, see Thomp. Corp. § 20.

Judge McIlvaine, in State v. Powers, 38 Ohio St. 54, announcing the opinion of the supreme court of Ohio, declared that common-school districts and boards of education are not corporations, within the meaning of section 1 of article 13 of the constitution of Ohio, although they are quasi corporations, and although declared by statute to be bodies politic and corporate.

Under the authorities cited, and the definitions quoted, it is clear that the plaintiff company is endowed with all the essential characteristics of a corporation, and that, for the purposes of jurisdiction, it must be regarded as such.

The motion for new trial is overruled, and judgment will be entered on the verdict for the amount claimed.