## Luba v. Bashline

*James A. Stranahan, 3rd,* for plaintiffs.
*William C. Kuhn,* for defendants.

ACKER, J., September 8, 1969.—Defendants, through a motion to strike and to set aside service, present to this court the issue of whether individual members of a partnership association formed under the Act of June 2, 1874, P. L. 271, 59 PS §341,[1] consisting of osteopathic physicians, can be held individually liable for the tort of an employe. The action is in trespass for personal injuries to a minor plaintiff and derivative rights by her parents for severe permanent injuries alleged to be caused by an injection administered in the left hip of the minor on June 6, 1967, by an employe of defendants. Defendants' partnership association was formed in December of 1961 for period of 20 years pursuant to the unique provisions of the Partnership Association Act of June 2, 1874, P. L. 271, as amended. The Act of May 1, 1876, P. L. 89, sec. 3, 15 PS §12773 and 59 PS §361, provides that such an association, ". . . shall sue and be sued in their association name; and when suit is brought against any such association, service thereof shall be made upon the chairman, secretary or treasurer thereof, which service shall be as complete and effective as if made upon each and every member of such association."

It is the contention of plaintiffs that defendant organization is really a general partnership as opposed to a statutory limited partnership and as such is controlled by Pa. R. C. P. 2128, which permits an action against a partnership to be prosecuted against one or more of the partners or against the partnership in its

---

[1] Also appearing verbatim in 15 PS §12701, et seq.

firm name. Plaintiff furnishes no reason why defendants are not properly organized under the above-mentioned statute and we find that they are so organized and constituted.

So finding, plaintiffs' contention is contra to the very wording of procedural rule 2176, dealing with corporations and similar entities as parties. It states that " 'corporation or similar entity' includes any . . . partnership association limited." [2]

If this were not an association of licensed professional medical practitioners, i. e., osteopathic physicians, the matter would be readily concluded in favor of defendants. Paragraph three of the "amended articles of partnership association" reads, however, "that the character of the business to be conducted is for the purpose of providing efficient and comprehensive medical and surgical treatment both of 'in patients and/or out patients,' together with allied services pertaining to the more efficient and comprehensive medical and surgical treatment of patients."

I. Can the Defendants Comply with Its Articles and Operate as a Limited Partnership to Exclude

[2] 3 Goodrich-Amram, §2176-7, at page 8, notes that such organization formed under the Act of 1874, is specifically included in the definition of partnership association limited. This position is consistent with many State and Federal cases which have held partnerships under this act to be in the nature of at least quasi corporations: Andrews Brothers Co. v. Youngstown Coke Co. Limited, 86 Fed. 585 (1898); Abington Dairy Company v. Reynolds, 24 Pa. Superior Ct. 632 (1904); where such a partnership was held to be the citizen for the purpose of granting jurisdiction upon diversity. See also Youngstown Coke Co. Limited v. Andrews Brothers Co., 79 Fed. 669 (1897). There, Chief Judge Mercur from Coal Company v. Rogers, 108 Pa. 150, was quoted: " 'It may not be improper to call such an association a quasi corporation. If not a corporation, it is a person. It is either a natural or artificial person. There is no intermediate place for it to occupy, no other name for it to bear. It cannot claim an existence which exempts it from all liabilities imposed on either class of persons.' "

Personal Liability of the Individual Partners for the Negligent Acts of Their Agents, Employes and Subordinates?

In 1961, the Pennsylvania legislature recognized by the Act of August 7, 1961, P. L. 941, sec. 1, et seq., the problems of professional persons unable by "law, tradition or etc . . ." to incorporate. It lists particularly that osteopaths were in such a category.[3]

Section 17 of that act, 15 PS §12617, would require in this case that the partners stand personally liable, for it is provided:

"(a) All of the associates of a professional association are liable jointly and severally for:

"(1) The torts of any agent or employe of the association committed while such agent or employe is acting within the ordinary course of operation of the association."

The issue then evolves as to whether the public policy of the Commonwealth is so strong as expressed in the above statute and our case law that the partners should not be permitted to avoid personal liability in this case by the use of the Act of 1874.

In deciding that issue, the fact that this limited partnership was formed December 14, 1961, after the "Professional Association Act" became effective is of note. Also that the articles provided that the partnership was formed ". . . for the purpose of providing efficient and comprehensive medical and surgical treatment both of 'in patients and/or out patients,' together with allied services pertaining to the more efficient and comprehensive medical and surgical treatment of patients."

The general rule is that all partners are liable for the negligence of one or an employe whose conduct arises from activities within the scope of his employment and in the furtherance of the partners' business:

[3] Act of August 7, 1961, P. L. 941, sec. 2, 15 PS §12602.

Baxter v. Wunder, 89 Pa. Superior Ct. 585 (1927); Fleming v. Kehler, 38 Northumb. 93 (1965), 28 P. L. Encyc. sec. 154, p. 627, 175 A. L. R. 1311.

In Brown v. Moore, 247 F. 2d 711, 355 U. S. 882, 2 L. Ed. 112, 78 S. Ct. 148 (1957), same case, 143 F. Supp. 816, p. 716: "We point out that a person going to a doctor for treatment impliedly contracts with him for treatment and under the law of Pennsylvania if the doctor fails to afford proper treatment and care a malpractice case sounding in tort can be maintained. It is also the law of Pennsylvania that partners are liable for trespass by themselves or by their employees in the legitimate course of the partnership business: 59 PS Pa. §35 and Baxter v. Wunder, 1927, 89 Pa. Super. 585."

Pennsylvania has held that a doctor in a hospital is liable for the negligence of a student nurse who burned a patient's feet by applying a scalding hot water bottle to plaintiff's feet. Liability was grounded on the concept that the act was not just administrative but therapeutic in nature: Benedict v. Bondi, 384 Pa. 574, 122 A.2d 209 (1956).

A doctor likewise may be liable for the negligent act of an intern in injecting the eye of a child: McConnell v. Williams, 361 Pa. 355, 65 A.2d 243 (1949).

In this case, it is alleged the negligent act was performed by an "agent, servant and employee."

Therefore, if the Act of 1874 was not here involved, there is no doubt liability of all partners could be asserted.

Professional persons in recent years have made numerous efforts to gain the same tax advantage as others achieving similar incomes, but have repeatedly been rebutted in their efforts by the Internal Revenue Service.[4]

---

[4] See 4 A.L.R. 3d 385.

Even after some of the Federal courts have recognized the right of professional men to organize for this purpose, the IRS has issued a directive refusing to recognize such partnerships and threatening to hold them invalid.[5]

Pennsylvania was one of the States which passed a statute to permit professional persons to form professional associations by the Act of 1961, supra. This statute was, of course, designed to meet IRS objections by clearly spelling out that the partners are required to be liable "jointly and severally for the torts of their agents and employee."

The Act of 1874, supra, under which defendants organized, was designed, it would appear, to grant limited liability if, but only if, verbatim compliance with the statute is effected.[6] The failure to insert the word, "limited," renders each participant liable individually for indebtedness, damage or liability.[7] Where the certificate of organization is defective members are liable as general partners.[8] If the listing of contributions of the partners is too general, so that a person could not make a correct estimate of the extent of the property, the partners are generally liable.[9] Nor can testimony be received to correct this error.[10] False statements as to assets contributed create the same result of general liability.[11]

The limited liability advantage of such partnerships appears to be based on the concept that a prospective

---

[5] This ruling, in turn, has been held by one Federal court to be invalid: Empey v. United States, 272 F. Supp. 851 (1967).

[6] Chatham National Bank v. Gardner, 31 Pa. Superior Ct. 135 (1906).

[7] 15 PS §12703.

[8] In Re: Assignment of Millwork and Mantel Company, 4 Pa. Superior Ct. 106 (1897).

[9] Maloney v. Bruce, 94 Pa. 249 (1880).

[10] Vanhorn v. Corcoran, 127 Pa. 255, 18 Atl. 16 (1889).

[11] Appeal of Hite Natural Gas Company, 118 Pa. 436, 12 Atl. 267 (1888).

creditor can go to the public records in the courthouse of the county in which it was formed and be apprised of the assets upon which he may rely for payment before dealing with the partnership.[12]

There is but one tort action decided under this act: Whitney v. Backus, 149 Pa. 29, 24 Atl. 51 (1892). It was trespass quare clausum fregit to recover treble damages for cutting timber. The court held, page 34:

"Such an association is answerable for the tortious acts which it expressly or impliedly authorizes, but its members are not personally responsible for them as a consequence of their contributions to its capital. If follows, that, when a member of the association is sued for its trespass it should appear that he was a participant in the tortious act complained of. It is not enough in such case to show that he was then an officer or agent of the association."

Applying that rule to the pleadings before us, no member of the partnership could be held, for none is named as directing the subordinate in injecting the minor's left hip prior to the planned tonsil operation.

As previously noted in this opinion, limited partnerships are artificial persons.[13]

If defendants had attempted to practice as a corporation and thereby achieved the same limited liability, it would have been denied.[14]

It has been held that ". . . that which tends to debase the learned professions is at war with the public interest and is therefore contrary to public policy": Bartron v. Codington County, 68 S. D. 309, 327, 2 N. W. 2d 337, p. 345. Further, page 322, 2 N. W. 2d 343, "Public policy is that principle of law which holds that

---

[12] Hinds v. Battin, 163 Pa. 487, 30 Atl. 164 (1894).

[13] See footnote 2 and John S. Stevens v. Phila. Ball-Club, 142 Pa. 52, 21 Atl. 797 (1891).

[14] Practice of Chiropody by Corporations, 27 D. & C. 61 (1936); Architects' Certificates, 4 D. & C. 766 (1924).

no person can lawfully do that which has a tendency to be injurious to the public or against the public good." [15]

Considering the alleged facts of this case, a 10-year-old child was taken by her parents to the Bashline Hospital in Grove City for a tonsilectomy. She was injected by an unnamed agent, servant or employe of defendants in the left hip or buttock resulting in the paralysis of her sciatic nerve. A permanent drop foot has followed.

Was it the intent of the 1874 legislature to protect doctors from such conduct by their employes by requiring a list of assets be filed in the recorder of deeds office of Mercer County? Of what benefit would such a search have been to this 10-year-old child? Requiring a release be executed in advance would not bind the child: Myers v. Sezov, 39 D. & C. 2d 650, 16 Bucks 119 (1966). Recognizing these defendants could not have effected this result by either incorporation or use of the Act of 1961, supra, we cannot permit such an unfair result in this case. If defendants attempted to bind the parents by a prior release, the very least they would be required to do would be to spell out with the greatest of detail the particularities. [16]

Here, the parents have no knowledge of any effort to limit liability. This court believes to so limit liability is contrary to public policy expressed by our legislature and our appellate decisions. [17] Nor do we believe defendants are serving the purpose of their formation of providing, "more efficient and comprehen-

[15] See also 17 C.J.S. Contracts 211. page 1015.

[16] Andrews v. Story and Crampton Fuel Oil Company, 44 Del. Co. 136 (1963).

[17] This decision is not intended to deal with any phase of this partnership except that before it. Nor is it in any way intended to state such partnerships are not legal or proper generally. It merely concludes these defendants must answer for the torts of their employes if properly proven at trial.

sive medical and surgical treatment of patients." Rather, they are serving their own interests in a manner which appears to be contrary to these plaintiffs and the general public.

Finally, it is contended by defendants that the complaint is not sufficiently specific because the agent or employes' name is not given. This being a trespass action, it is, of course, not required: Chadderton v. Cleveland Paint Company, 8 Mercer 258 (1968).

Wherefore, defendant's motion to strike, set aside service and for a more specific complaint are denied.

### ORDER

And now, September 8, 1969, defendants' preliminary objection in the nature of motions to strike complaint, set aside service and for a more specific complaint are denied.