LIVERPOOL INSURANCE COMPANY *v.* MASSACHUSETTS.

1. A corporation created by one State can only exercise its corporate franchises in another State by the comity of the latter.
2. A joint stock association, which by its deed of settlement in England and certain acts of Parliament is endowed with the faculties and powers mentioned below, is a corporation, and will be so held in this country, notwithstanding the acts of Parliament in accordance with a local policy declare that it shall not be so held.   These faculties and powers are:
    1. A distinctive artificial name by which it can make contracts.
    2. A statutory authority to sue and be sued in the name of its officers as representing the association.
    3. A statutory recognition of the association as an entity distinct from its members, by allowing them to sue it and be sued by it.
    4. A provision for its perpetuity by transfers of its shares, so as to secure succession of membership.
3. In this country the individual responsibility of the shareholder for the debts of the association, is not incompatible with the corporate idea.

4. Such corporations, whether organized under the laws of a State of the Union or a foreign government, may be taxed by another State, for the privilege of conducting their corporate business within the latter.

ERROR to the Supreme Judicial Court of Massachusetts; the case being this:

A statute of the State just named imposes upon "each fire, marine, and fire and marine insurance company, *incorporated* or *associated* under the laws of any government or State other than one of the United States, a tax of 4 per cent. upon all premiums charged or received on contracts made in this commonwealth for insurance of property." The same statute imposes a tax of but 2 per cent. upon such premiums when the company is incorporated under the laws of any one of the United States other than Massachusetts; upon which premiums, where the company is incorporated by itself, it imposes but 1 per cent.; while no tax is imposed by the laws of the State upon the business of insurances transacted by any natural persons citizens of the same.

With the enactment just mentioned on its statute-book, the State of Massachusetts, in 1868, filed a bill in its Supreme Judicial Court against the Liverpool and London Life and Fire Insurance Company (a company doing a large business in that State), to collect a tax of 4 per cent. on its premiums upon contracts made in Massachusetts for insurance of property, and to restrain the company from doing further business till the tax was paid.   The company set up that it was not "incorporated" at all, but was an association, under the laws of Great Britain, of natural persons, some of whom were citizens and residents of the country just named; and some citizens and residents of the State of New York; formed for the purpose of conducting the business of insurance under certain deeds of settlement, and having the legal character of a partnership; that accordingly it could not be taxed as a "company *incorporated* under the laws of any government or State other than one of the United States;" while, in so far as the discriminating tax of 4 per cent. was sought to be laid against it as a company *associated* simply and not incorporated, it violated, in regard to the members

of the company who were subjects of Great Britain, a provision in the treaty of 1815, between that country and the United States, by which it is agreed that the merchants and traders of each nation respectively shall enjoy the *most complete protection and security for their commerce;* and—in regard to the citizens of New York, that provision in section 2, article 4, of the Federal Constitution which secures to the citizens of each State all the privileges and immunities of citizens in the several States.

Of course, if the company was a corporation, the defence failed: and it not being denied that the persons composing the company were British subjects, with certain citizens of New York with rights like theirs, the first question—and the only one if it was resolved affirmatively—was whether the company was a corporation or not.

The company had been originally formed, in May, 1836, in Liverpool, by a "deed of settlement."

This instrument, as far as it could be done without the aid of Parliament, established a company under the name of "The Liverpool Life and Fire Insurance Company," with a capital of £2,000,000 sterling, which was divided into 100,000 shares of £20 each, and declared its purpose to be making insurance on life and against fire. These shares could be sold and transferred, and executors and administrators represented them in the company on the death of the owner. If, by the laws of the association, a share became forfeited, the owner was released from all further liability to the company. The business of the company was to be conducted by a board of directors *exclusively*, and they could make by-laws and change and modify them. There was a covenant that suits might be brought by or against the company in the names of one or more directors, which should bind the stockholders, and that no stockholder would plead in abatement the nonjoinder of the others; and it was further covenanted that a judgment so obtained against a director might be made out of the property of any of the stockholders. Numerous other provisions were found in the original articles, which consisted of over a hundred sec-

tious, but only those are referred to here which bear on the
question which the court had before it. There were also
three subsequent deeds of settlement, and three acts of Par-
liament were passed to give efficiency to the purposes of the
association.

The first of these acts provided that the association might
sue and be sued in the name of the chairman or deputy
chairman of the board of directors; that the stockholders
might sue the company as plaintiffs, or be sued by it as
defendants. It regulated the manner in which *the share-
holders might be made individually liable for the debts of the asso-
ciation;* and it declared that the act should *not be construed to
incorporate the company or relieve its members from their indi-
vidual liability,* except as provided in the act.

The second act of Parliament changed the name of the
company to that which it now bears, and authorized it to
make contracts by the new name, and it also contained a
provision that the act should *not make the company a corpora-
tion;* and there was a third act which authorized amalga-
mation with another company, and which again provides
*against its being construed into an act of incorporation or a limited
liability partnership.*

The Supreme Judicial Court of Massachusetts gave a de-
cree against the company, and enjoined it from the further
prosecution of its business till the taxes found to be due
were paid.

The case was now brought to this court on the ground
that in its application to the company the statute of Massa-
chusetts was in conflict with the provision of the Constitu-
tion, which confers on Congress the right to regulate com-
merce with foreign nations and among the States, and with
that which secures to the citizens of each State all the privi-
leges and immunities of citizens in the several States.

*Messrs. B. R. Curtis and J. G. Abbott, for the company,
plaintiff in error:*

Whatever may be the character of the defendants, their
association together and their relations to others, they must

depend upon the laws of Great Britain. If the defendants are not a corporation by the English law, then they are not by our law, because here they have done no act in any way to alter or change their legal status or their relations to others. Indeed, our law does not in any way apply to them, act upon or affect their character, or profess to do it; it leaves that to be defined by the laws of the country under which they formed their association.

Now, under the laws of Great Britain, it cannot be maintained that the defendants are a corporation, or in fact anything more than a partnership of a large number of natural persons, having procured certain privileges from the government, under which they associated together for the convenience of those who deal with them.

In Great Britain, the King and Parliament alone can create corporations. In this case, neither has exercised the power, but when Parliament granted to the company certain privileges, especial care was taken to declare that the grant made should *not* create a corporation. This seems conclusive.

With us the defendants would not possess and enjoy the privilege, or be subject to the liability of being sued, and suing in the name of an officer of their association, but would be obliged to sue or be sued in the name of all partners, for the acts of Parliament giving that right and imposing that liability, apply to the manner of enforcing a remedy, and cannot avail beyond its own limits and courts.

So that when the defendants transact their business in this country, the acts of Parliament, giving some of the privileges of corporations, are of no avail to them; in fact they are like any partnership of natural persons, and must be treated in the same way, entitled to the same rights and privileges, and subject to the same liabilities.

Numerous cases in the English Reports where the rights, privileges, and liabilities of such bodies as this one are passed upon, show that the association here is not a corporation.*

---

* Harrison v. Timmins, 4 Meeson & Welsby, 510; Bartlett v. Pentland, Barnewall & Adolphus, 704; Van Sandau v. Moore, 1 Russell, 441; Cape's

But if the defendants were an association of our own citizens, formed here under like deeds of settlement, and like acts of the legislature, they would not be held to be corporations. The association does not make out of its members a new artificial political person; it still remains a body of natural persons, with certain privileges conferred upon them. No new body is created by the legislature with the property of individuality, and the capacity of holding property and transacting business. Indeed, the association falls entirely short of being a corporation, as usually defined and understood.*

Nor does this case fall within a principle often acted upon by courts, that when a collective body of natural persons are granted powers, rights, and privileges by a collective name, and there is no mode in which they can be enjoyed and exercised, without acting in a corporate capacity, such a body is held to be a corporation by necessary implication. Here, such implication is precluded by the legislative declaration that a corporation shall not exist, and by the fact that the deeds and legislative acts very minutely and carefully provide in what manner the rights and powers granted shall be enjoyed and exercised. Indeed, it is always holden, that where a corporation is so established by implication, the legislative intention to confer a corporate existence must be certain and plain.

Assuming that the plaintiff in error was not a corporation, but was, as they above argued, a partnership or association of individuals, some of which were subjects of Great Britain and others citizens of the State of New York, the learned counsel argued further that the rights of the former were protected by the treaty between the United States and Great Britain, and the rights of the latter by section 2, article 4, of the Federal Constitution referred to in the statement of the case.

Executors, 2 De Gex, Mylne & G. 562; Mahew's Case, 5 Id. 562; Blakeley's Exec., 13 Beavan, 133; Burnes v. Pennell, 2 House of Lord's Cases, 522.

* Dartmouth College v. Woodward, 4 Wheaton, 636; Providence Bank v. Billings, 4 Peters, 562.

*Mr. Charles Allen, Attorney-General of Massachusetts,* contra *:*

It is true, that the various acts of Parliament conferring corporate privileges upon the plaintiffs in error declare that it is not the intention thereby to constitute them a corporation; and if merely saying that they are not to be a corporation, at the same time when all the essential qualities and privileges of a corporation are bestowed upon them, would make it that they are not in fact a corporation, then it would have to be admitted that they are not a corporation. But in ascertaining the legal character of the company, we are not to look at what they are called, but at what they are.

By what rule is the question to be tested? The essential characteristics of a corporation are not the same at different times and in different countries. The definitions of a corporation vary. Certain things were formerly deemed essential qualities of a corporation, which are so no longer. Thus, a common seal formerly had essential significance, in those days when it was considered that corporations could only act by deed; but now, in this country, the common seal is of no significance. It is a mere ornament, and without use.

The deeds of settlement of the company show that they strained all laws applicable to partnerships to the very utmost, in the endeavor to provide for the transaction of their business before applying to Parliament for corporate privileges. This company by their deeds of settlement, in fact, made provisions and took upon themselves powers which are inconsistent with the common law applicable to partnerships.

For instance, carrying on business by means of directors *exclusively*, and depriving the members of *all* voice in determining matters. This is one. But it was in vain, with the aid of all the provisions that were contained in the deed of settlement, or that could be included in a private agreement among individuals, to attempt to stretch the law of partnerships far enough to cover the business of this company.

Accordingly acts of Parliament were obtained, which gave them in direct terms the various powers; among these, that

they might sue and be sued in the name of one individual; that the company might sue and be sued by members of the company; that an amalgamation with another company should be binding on all of their members, whether consenting or not.

After these acts this company lacked no quality or characteristic of a corporation.

The exemption from individual liability is not now (however it may have been heretofore) a characteristic test of a corporation.

[Mr. Allen then replied (though he considered that the court would not get so far as to these points) to the arguments as to rights of the British stockholders under the treaty with Great Britain and of those of New York under the Federal Constitution.]

Mr. Justice MILLER delivered the opinion of the court.

The case of *Paul* v. *Virginia*,* decided that the business of insurance, as ordinarily conducted, was not commerce, and that a corporation of one State, having an agency by which it conducted that business in another State, was not engaged in commerce between the States.

It was also held in that case that a corporation was not a citizen within the meaning of that clause of the Constitution, which declares that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States, and that a corporation created by a State could exercise none of the functions or privileges conferred by its charter in any other State of the Union, except by the comity and consent of the latter.

These propositions dispose of the case before us, if plaintiff is a foreign corporation, and was, as such, conducting business in the State of Massachusetts, and we proceed to inquire into its character in this regard.

The institution now known as the Liverpool and London Life and Fire Insurance Company, doing an immense busi-

---

* 8 Wallace, 168.

ness in England and in this country, was first organized at Liverpool by what is there called a deed of settlement, and would here be called articles of association.

It will be seen by reference to the powers of the association, as organized under the deed of settlement, legalized and enlarged by the acts of Parliament, that it possesses many, if not all, the attributes generally found in corporations for pecuniary profit which are deemed essential to their corporate character.

1. It has a distinctive and artificial name by which it can make contracts.

2. It has a statutory provision by which it can sue and be sued in the name of one of its officers as the representative of the whole body, which is bound by the judgment rendered in such suit.

3. It has provision for perpetual succession by the transfer and transmission of the shares of its capital stock, whereby new members are introduced in place of those who die or sell out.

4. Its existence as an entity apart from the shareholders is recognized by the act of Parliament which enables it to sue its shareholders and be sued by them.

The subject of the powers, duties, rights, and liabilities of corporations, their essential nature and character, and their relation to the business transactions of the community, have undergone a change in this country within the last half century, the importance of which can hardly be overestimated.

They have entered so extensively into the business of the country, the most important part of which is carried on by them, as banking companies, railroad companies, express companies, telegraph companies, insurance companies, &c., and the demand for the use of corporate powers in combining the capital and the energy required to conduct these large operations is so imperative, that both by statute, and by the tendency of the courts to meet the requirements of these public necessities, the law of corporations has been so modified, liberalized, and enlarged, as to constitute a branch

of jurisprudence with a code of its own, due mainly to very recent times.   To attempt, therefore, to define a corporation, or limit its powers by the rules which prevailed when they were rarely created for any other than municipal purposes, and generally by royal charter, is impossible in this country and at this time.

Most of the States of the Union have general laws by which persons associating themselves together, as the shareholders in this company have done, become a corporation.

The banking business of the States of the Union is now conducted chiefly by corporations organized under a general law of Congress, and it is believed that in all the States the articles of association of this company would, if adopted with the usual formalities, constitute it a corporation under their general laws, or it would become so by such legislative ratification as is given by the acts of Parliament we have mentioned.

To this view it is objected that the association is nothing but a partnership, because its members are liable individually for the debts of the company.   But however the law on this subject may be held in England, it is quite certain that the principle of personal liability of the shareholders attaches to a very large proportion of the corporations of this country, and it is a principle which has warm advocates for its universal application when the organization is for pecuniary gain.

So also it is said that the fact that there is no provision either in the deed of settlement or the act of Parliament for the company suing or being sued in its artificial name forbids the corporate idea.   But we see no real distinction in this respect between an act of Parliament, which authorized suits in the name of the Liverpool and London Fire and Life Insurance Company, and that which authorized suit against that company in the name of its principal officer. If it can contract in the artificial name and sue and be sued in the name of its officers on those contracts, it is in effect the same, for process would have to be served on some such officer even if the suit were in the artificial name.

It is also urged that the several acts of Parliament we have mentioned expressly declare that they shall not be held to constitute the body a corporation.

But whatever may be the effect of such a declaration in the courts of that country, it cannot alter the essential nature of a corporation or prevent the courts of another jurisdiction from inquiring into its true character, whenever that may come in issue. It appears to have been the policy of the English law to attach certain consequences to incorporated bodies, which rendered it desirable that such associations as these should not become technically corporations. Among these, it would seem from the provisions of these acts, is the exemption from individual liability of the shareholder for the contracts of the corporation. Such local policy can have no place here in determining whether an association, whose powers are ascertained and its privileges conferred by law, is an incorporated body.

The question before us is whether an association, such as the one we are considering, in attempting to carry on its business in a manner which requires corporate powers under legislative sanction, can claim, in a jurisdiction foreign to the one which gave those powers, that it is only a partnership of individuals.

We have no hesitation in holding that, as the law of corporations is understood in this country, the association is a corporation, and that the law of Massachusetts, which only permits it to exercise its corporate function in that State on the condition of payment of a specific tax, is no violation of the Federal Constitution or of any treaty protected by said Constitution.

Mr. Justice BRADLEY:

Whilst I agree in the result which the court has reached, I differ from it on the question whether the company is a corporation. I think it is one of those special partnerships which are called joint-stock companies, well known in England for nearly a century, and cannot maintain an action or be sued as a corporation in this country without legislative

aid.   But as it is a company associated under the laws of a foreign country, it comes within the scope of the Massachusetts statute, and cannot claim exemption from its operation for the causes alleged in that behalf.   It could not have been the intent of the treaty of 1815 to prevent the States from imposing taxes or license laws upon either British corporations or joint-stock companies desiring to establish banking or insurance business therein.   And certainly these companies cannot be exempted from such laws on the ground that citizens of other States have chosen to take some of their shares.

JUDGMENT AFFIRMED.