## ANDREWS BROS. CO. v. YOUNGSTOWN COKE CO., Limited.

(Circuit Court of Appeals, Sixth Circuit. April 11, 1898.)

### No. 554.

1. CORPORATION—ESSENTIAL ATTRIBUTE.
   The only absolutely essential attribute of a corporation is the capacity to exist and act within the powers granted, as a legal entity, apart from the individual or individuals who constitute its members.

2. FEDERAL JURISDICTION—DIVERSE CITIZENSHIP—PARTNERSHIP ASSOCIATIONS.
   A "partnership association, limited," or organized under Act June 2, 1874, which is governed by a board of managers, with liability of members limited to the amount of their unpaid capital stock, power to sue and be sued, and to hold and convey real estate, in its associated name, is a corporation and a citizen of Pennsylvania, within the meaning of the statutes of the United States requiring diversity of citizenship to give federal jurisdiction, though the assignee of the interest of a member in the capital stock cannot participate in the affairs of the company unless elected to membership therein by a majority of its members.

3. RES JUDICATA.
   Where, in an action for specific performance between the parties to a contract, the same is declared invalid, it cannot be set up and again litigated in an action brought to recover the value of coke delivered to the defendant thereunder.

4. INVALID CONTRACT—PROPERTY DELIVERED THEREUNDER—RECOVERY.
   Where a contract not immoral or against public policy is declared invalid by reason of its improper execution, either party may recover from the other the value of the property delivered by him to, and retained by, the other under the contract.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This is an action by the Youngstown Coke Company, Limited, claiming to be a corporation organized under the law of Pennsylvania, against the Andrews Brothers Company, a corporation of the state of Ohio, to recover $7,967.95, with interest from January 31, 1889, for coke sold and delivered to the defendant by an unauthorized agent of the plaintiff, and used by the defendant corporation. The suit is to recover the market value as for a conversion. A jury was waived, and the issues of law and fact submitted to the court, which found for the plaintiff, and entered judgment for $9,519.16. This writ of error was sued out by the defendant for the purpose of reversing this judgment.

Thomas W. Sanderson, for plaintiff in error.
John G. White, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The first and principal question is whether the circuit court had jurisdiction. The plaintiff is described in its original petition as "a limited partnership association, duly organized and existing under and by virtue of the laws of the state of Pennsylvania, of which state it is a citizen." This was perhaps an insufficient statement of its corporate character, under Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, and Carnegie, Phipps & Co. v. Hulbert, 3 C. C. A. 391, 53 Fed. 10. To meet this difficulty, an amended petition was filed, in which it was averred that the plaintiff was a corporation under the laws of Pennsylvania and a citizen of that state. The defendant in an amended answer, and by way of abatement, admits that the plaintiff company was created and organized under the Pennsylvania act of June 2, 1874, but denies that it thereby became either a corporation or a citizen of said state, within the meaning and effect of the statutes of the United States, requiring diversity of citizenship to give jurisdiction to a United states court. A Pennsylvania act of March 21, 1836, provided for the creation of limited or special partnerships, having one or more general partners with unlimited liability and special partners with limited liability. But such associations had none of the attributes or faculties of a corporation. The history of that act and its amendments is fully stated in the opinion of the court in Laflin & Rand Co. v. Steytler, 146 Pa. St. 434, 23 Atl. 215. The act of 1874, under which the Youngstown Coke Company was organized, was neither an amendment nor a supplement to the act of 1836. In the case cited above, the court, in speaking of this act of 1874, say:

"The act of 1874, it will be seen, was not a mere amendment or supplement to anything that went before, but, like the act of 1836, a new scheme, carefully and elaborately drawn, creating a new kind of artificial person, standing between a limited partnership as previously known and a corporation, and partaking of the attributes of each. It was, however, a step forward in the same line of legislative recognition of business demands uniformly pursued since the start, in 1836."

The act of June 2, 1874, under which the defendant in error was organized, is in 17 sections. The first provides that three or more persons desiring to organize under the act may do so by preparing, signing, and acknowledging a statement in writing which shall set forth the amount of capital subscribed for by each; the total amount of capital, and when and how to be paid; the character of the business and location of same; the name of the association, with the word "Limited" added thereto as a part of same; the duration of the association, which shall not exceed 20 years; and the names of the officers selected in conformity with the act. The second section provides that the members of the association shall not be liable for the debts or engagements of the company beyond their unpaid subscriptions to the capital. The fourth section provides that interests in such associations shall be personal estates, and may be transferred, given, be-

queathed, distributed, sold, or assigned under such rules and regulations as shall be adopted from time to time—

"By a vote of a majority of the members in number and value of their interests; and in the absence of such rules and regulations the transferee of any interest in any such association shall not be entitled to any participation in the subsequent business of such association, unless elected to membership therein, by a vote of a majority of the members in number and value of their interests. And any change of ownership, whether by sale, death, bankruptcy or otherwise, which occurs in the absence of any rules and regulations of such association regulating such transfer, and which is not followed by election to membership in such associations, shall entitle the owner or transferee only to the value of the interest so acquired at the date of acquiring such interest, at a price and upon terms to be mutually agreed upon, and in default of such agreement, at a price and upon terms to be fixed by an appraiser to be appointed by the court of common pleas of the proper county, on the petition of either party, which appraisement shall be subject to the approval of said court."

The fifth section provides for a board of managers, who shall be not less than three nor more than five, one of whom shall be chairman, one the treasurer, and one the secretary. This section also provides that:

"No debt shall be contracted or liability incurred for such association, except by one or more of the managers, and no liability greater than five hundred dollars, except against the person incurring it, shall bind the association, unless reduced to writing and signed by at least two managers."

The sixth and seventh sections provide for distribution of profits through dividends, such dividends not to impair capital, and that it shall be unlawful to lend its credit, name, or capital to any member, or to any other person, without consent of a majority in number and value of members in writing. The eighth, ninth, and tenth sections provide how such companies may be dissolved, and how the property shall be distributed. The remaining parts of the act provide—First, that the association may sue and be sued in its associate name, service of process to be made upon one of its officers, or on any agent, clerk, or manager in counties where it may maintain an office; second, that such associations may acquire, hold, and convey real estate in its associated name.

This act does not declare these associations to be "corporations," nor are they styled "corporations." They are called "partnership associations." Neither does the act disclaim a purpose to create corporations, as was the case under the English and New York joint-stock acts mentioned and construed in Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566, and People v. Coleman, 133 N. Y. 279, 31 N. E. 96. But the fact of corporation or no corporation must depend upon the existence or nonexistence of those faculties which are of the essence of corporate existence. We need not be too attentive to mere names. The inquiry must go deeper, and a solution be reached upon principle.

In the masterly opinion of Chief Justice Nelson in Thomas v. Dakin, 22 Wend. 9, 70, that learned jurist, when engaged in the determination of a like question arising under the New York law providing for banking associations, was confronted with the fact that the act did not declare the associations thereby organized to be corporations, or style them such, and said:

"A corporate body is known to the law by the powers and faculties bestowed upon it, expressly or impliedly, by the charter. The use of the term 'corporation' in its creation is of itself unimportant, except as it will imply them."

In the same case, Judge Cowen (22 Wend. 103) said:

"It has been impossible for me to see the force of the argument that the legislature have constantly avoided to call these associations, or any of their machinery, a corporation. Therefore we cannot adjudge them to be so. If they have the attributes of corporations, if they are so in the nature of things, we can no more refuse to regard them as such than we could refuse to acknowledge John or George to be natural persons, because the legislature may, in making provisions for their benefit, have been pleased to designate them as belonging to some other species. Should the legislature expressly declare each of them to be corporations, without giving them corporate succession or other artificial attributes, the declaration would not make them so. On the other hand, even an express legislative declaration that certain associations are not included in the definition of corporations would not change their character, provided they should in fact be clothed with all the essential powers of corporations."

In Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566–576, in considering the corporate character of the Liverpool Insurance Company, a joint-stock association organized under an English act of parliament, the court said:

"It is also urged that the several acts of parliament we have mentioned expressly declare that they shall not be held to constitute the body a corporation. But, whatever may be the effect of such a declaration in the courts of that country, it cannot alter the essential nature of a corporation or prevent the courts of another jurisdiction from inquiring into its true character, whenever that may come in issue. It appears to have been the policy of the English law to attach certain consequences to incorporated bodies, which rendered it desirable that such associations as these should not become technically corporations. Among these, it would seem from the provisions of these acts, is the exemption from individual liability of the shareholder for the contracts of the corporation. Such local policy can have no place here in determining whether an association, whose powers are ascertained and its privileges conferred by law, is an incorporated body. The question before us is whether an association, such as the one we are considering, in attempting to carry on its business in a manner which requires corporate powers under legislative sanction, can claim, in a jurisdiction foreign to the one which gave those powers, that it is only a partnership of individuals. We have no hesitation in holding that, as the law of corporations is understood in this country, the association is a corporation, and that the law of Massachusetts, which only permits it to exercise its corporate function in that state on the condition of payment of a specific tax, is no violation of the federal constitution or of any treaty protected by said constitution."

Definitions are dangerous. They are most often too narrow,·but not infrequently too broad. Many definitions of a corporation have been attempted. Most of them include one or more faculties which in this country are clearly not essential, or are included within more general powers already catalogued. Kyd defines a corporation thus:

"Though many things be incident to a corporation, yet, to form the complete idea of a corporation aggregate, it is sufficient to suppose it vested with the three following capacities: (1) To have perpetual succession under a special denomination, and under an artificial form; (2) To take and grant property, to contract obligations, and to sue and be sued by its corporate name in the same manner as an individual; (3) To receive grants of privileges and immunities, and to enjoy them in common. These alone are sufficient to the essence of a corporation."

Judge Nelson, in Thomas v. Dakin, cited above, says:

"We may, in short, conclude by saying, with the most approved authorities at this date, that the essence of a corporation consists in a capacity to have perpetual succession under a special name, and in an artificial form; (2) to take and grant property, contract obligations, sue and be sued by its corporate name as an individual; and (3) to receive and enjoy, in common, grants of privileges and immunities."

Judge Dillon defines it thus:

"A corporation is a legal institution, devised to confer, upon the individuals of which it is composed, powers, privileges, and immunities which they would not otherwise possess, the most important of which are continuous legal identity and perpetual or indefinite succession, under the corporate name, notwithstanding successive changes, by death or otherwise, in the corporators or members of the corporation. It conveys, perhaps, as intelligible an idea as can be given by a brief definition to say that a corporation is a legal person, with a special name, and composed of such members, and endowed with such powers, and such only, as the law prescribes." 1 Dill. Mun. Corp. (3d Ed.) § 18.

Angel and Ames, in their work on Corporations, define a corporation as, "a body created by law, composed of individuals united under a common name, the members of which succeed each other, so that the body continues the same, notwithstanding the change of the individuals who compose it, and is, for certain purposes, considered as a natural person." 1 Ang. & A. Corp. §§ 1–30.

It is not essential to the idea of a corporation that it shall have perpetual existence, for limited corporations are a matter of most common occurrence, whether organized under special or general laws. Neither is it essential that it shall have capacity to sue and be sued under its corporate name, for it may be authorized only to sue in the name of one of its officers, as was the case under the New York banking law. That it shall have capacity to sue and be sued under some name standing for the collective body is all that is necessary. Thomas v. Dakin, 22 Wend. 9; Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566. In the last analysis, the only absolutely essential attribute of a corporation is the capacity to exist and act within the powers granted, as a legal entity, apart from the individual or individuals who constitute its members.

Thus, in Green's Brice, Ultra Vires (2d Am. Ed.) §§ 1, 2, it is said that "a corporation is a person which exists in contemplation of law only, and not physically." Again, the same author, in commenting on Kyd's definition, says:

"But sufficient stress is not laid upon that which is its real characteristic in the eye of the law, viz. its existence separate and distinct from the individual or individuals composing it. * * * This is the one important fact. The members of a corporation aggregate, and the one individual who is constituted a corporation sole, may, from their connection with such, have rights and privileges, and be under obligations and duties, over and above those affecting them in their private capacity; but they get them by reflection, as it were, from the corporation. They individually are not the corporation,—cannot exercise the corporate powers, enforce the corporate rights, or be responsible for the corporate acts."

A forcible illustration of this distinction between the corporation and its members is found in the case of Button v. Hoffman, 61 Wis., 20, 20 N. W. 667. There one who was the sole owner of all the capital stock of a corporation sought to recover corporate property in an action of replevin in his own name. It was held that he was not the legal owner of the property and could not maintain the action.

In the great Dartmouth College Case, Chief Justice Marshall gave a definition which has been frequently quoted. "A corporation," said he, "is an artificial being, invisible, intangible, and existing only in contemplation of law. Being a mere creature of law, it possesses only those properties which the charter of its creation confers upon it,

either expressly or as incidental to its very existence." After considering those powers usually conferred, he proceeds: "It is chiefly for the purpose of clothing bodies of men, in succession, with qualities and capacities, that corporations were invented and are in use. By these means, a perpetual succession of individuals are capable of acting for the promotion of the particular object like one material being." 4 Wheat. 518–636. And in Bank v. Billings, 4 Pet. 514–562, the same great judge said: "The great object of an incorporation is to bestow the character and properties of individuality on a collective and changing body of men." The capacity to be is one thing, and of doing, another. The latter constitute the franchises, and may be separated both in conception and fact from the former. Thus, in Memphis & L. R. Co. v. Railroad Com'rs, 112 U. S. 609–619, 5 Sup. Ct. 299, in considering that which passed under a foreclosure sale under a mortgage of the property and franchises of a railroad company, the court, through Justice Matthews, said:

"The franchise of being a corporation need not be implied as necessary to secure to the mortgage bondholders, or the purchasers at a foreclosure sale, the substantial rights intended to be secured. They acquire the ownership of the railroad, and the property incident to it, and the franchise of maintaining and operating it as such; and the corporate existence is not essential to its use and enjoyment. All the franchises necessary and important to the beneficial use of the railroad could as well be exercised by natural persons. The essential properties of corporate existence are quite distinct from the franchises of the corporation. The franchise of being a corporation belongs to the corporators, while the powers and privileges, vested in and to be exercised by the corporate body as such, are the franchises of the corporation. The latter has no power to dispose of the franchise of its members, which may survive in the mere fact of corporate existence, after the corporation has parted with all its property and all its franchises."

But these associations authorized by the Pennsylvania act of 1874 possess every attribute deemed essential to the existence of a corporation under any authoritative definition of a corporation. They come into being only by the creative power of the sovereign will, as expressed in the statute which authorizes their organization. That act constitutes at once the authority for their existence and the measure of their powers. When organized, they constitute a new artificial person, endowed with the power of suing and being sued, and of acquiring, holding, and conveying property in its artificial character. Created by compliance with the constating law, they can be dissolved only in the way pointed out by that law. Individual liability for corporate debts, beyond unpaid subscription to the capital stock, does not exist. Coal Co. v. Rogers, 108 Pa. St. 147–150; Stevens v. Ball Club, 142 Pa. St. 52–61, 21 Atl. 797. The members do not act as individuals, or as partners, but through and in the name of the collective or corporate body. Hill v. Stetler, 127 Pa. St. 145–162, 13 Atl. 306, and 17 Atl. 887. The members are not liable individually for the torts of the association, unless they personally participate. Whitney v. Backus, 149 Pa. St. 29, 24 Atl. 51. In all these respects it would be difficult to distinguish these companies from the ordinary business corporations authorized under general acts in most, if not all, of the states of the Union. In other respects they are somewhat peculiar, and it is these peculiar features which distinguish them from the ordinary busi-

ness corporations provided for by other Pennsylvania legislation, and which have led to some confusion in defining their character. Thus, the managers alone may create a debt, and no liability in excess of $500 is valid, unless the contract be in writing, and signed by two, at least, of the managers. This is a mere limitation upon the usual powers of officers and agents to bind the artificial body, and in no way affects the corporate character of that body. But the most marked peculiarity is found in the provisions of the fourth section of the constituting act, whereby, in the absence of some other regulation, adopted by the members, the assignee of the interest of a member in the capital stock, by operation of law or otherwise, does not become a member until elected. In default of election, the association must pay the value of the interest as ascertained by agreement, or, in default thereof, by an appraiser, provided for in the statute. This dilectus persona-rum is a most inviting inducement to the formation of small business corporations, where the personnel of the members is a matter of some importance, and is the only feature which particularly distinguishes these associations from ordinary corporations. This power of selection is similar to that belonging to ordinary co-partnerships. A member may sell his interest, but such sale dissolves the partnership. If the remaining members assent to the admission of the new member, the legal result is a new firm. Under this provision of the act of 1874, the sale of an interest does not operate as a dissolution, but requires that the company shall buy the interest unless the transferee is acceptable. The principle is not new in partnerships where the partners give a preference to the firm or its members by contract in event of sale or other devolution of title.

The case of Carter v. Oil Co. (Pa. Sup.) 38 Atl. 571, has been much relied upon by the plaintiff in error as a supposed adjudication by the supreme court of Pennsylvania of the noncorporate character of these companies. That case involved the status of a member who had bought the interest of another, and who was denied the status of a member in respect of this new interest. The court maintained the validity of a rule of the association refusing to one acquiring the capital stock of another the rights of a member in respect thereto, unless he should be elected a member. The contention of the plaintiff was that a corporation could not deny to any one acquiring capital stock the rights and privileges of a member in respect thereto. To this the court said:

"We cannot assent to the plaintiff's claim that the defendant company is a corporation, and restricted in the adoption of by-laws, rules, and regulations for its government to such as it is within the power of the latter to prescribe. It may be conceded that the defendant company has some of the qualities of a corporation, but it is, nevertheless, a partnership association, governed by the statutes and articles under which it was organized, and the rules and regulations it may prescribe in execution of the power with which the statutes have invested it. We concur in, and need not add anything to, what the learned judge of the court below has so well said on this point."

What the court below had said was this:

"Whether the partnership association ought to be classified by the professor of legal science as a species of the genus corporation, or the genus partnership, or whether it should be set apart as a new genus, seems to me unimportant. If a corporation, it is so peculiar in its features that the general law of corporations

cannot be applied to it without important modifications. If a partnership, it so differs from the common-law type that the general law of partnerships is but slightly applicable. Both the law of corporations and the law of partnerships are to be resorted to in the absence of statutory regulations, the choice being determined by the nature of the feature under consideration. In the present case we derive little assistance from either. The general rule of corporations invoked by the plaintiff has been laid down to meet the conditions existing in corporations in which the ownership of stock carries with it, ipso facto, membership in the corporate body. If there are corporations in which the conditions are different, it is manifest that the rule is inapplicable to the extent of the difference. * * * A partnership association differs from the common type of partnerships in that the members vote, and do not act with the powers of partners, and in that they are subject to no joint liability. It differs from the common type of corporations in that the members have a right to admit or refuse membership in the company to the transferee of the interest as well as in some other particulars."

The most that can be said of this decision is that the court declined to classify these companies with ordinary corporations, and contented itself by giving it its statutory designation.

We have already seen by the Pennsylvania cases cited that that court had time and again held these companies to have the very attributes which enable us to distinguish a corporation from a mere partnership. The fact that these companies were not called "corporations" in the act of 1874, and that they possessed this dilectus personarum, has led to some confusion of terminology in the effort to describe them. In Coal Co. v. Rogers, 108 Pa. St. 147–150, where the question was as to whether such company was included within a penal act touching trespasses by any person or corporation, the court said:

"Such an association is not technically a corporation, yet it has many of the characteristics of one. It can sue and be sued in its associate name only. The longest period of its duration is fixed by the act which provides for its existence. Like most corporations, its capital (except in certain cases designated by the act) is alone liable for its debts. The making of any division of profits which shall at the time diminish or impair the capital of the association is prohibited. * * * The act further provides for a dissolution of the association, for winding up its business, and for the distribution of its property. It may not be improper to call such an association a 'quasi corporation.' If not a corporation, it is a person. It is either a natural or an artificial person. There is no intermediate place for it to occupy, no other name for it to bear. It cannot claim an existence which exempts it from all liabilities imposed on either class of persons. In law, the main division of persons is between natural and artificial persons. The latter class are corporations."

In Hill v. Stetler, 127 Pa. St. 145–161, 17 Atl. 887, the court said of associations organized under the act, that the act provides for the "creation of a new artificial person, to be called a joint-stock association, having some of the characteristics of a partnership, and some of a corporation."

In McGeorge v. Manufacturing Co., 141 Pa. St. 575–578, 21 Atl. 671. the court said:

"A short comprehensive name or phrase descriptive of the status, powers, and responsibilities of associations like the defendant, does not yet appear to be agreed upon. They are called 'partnership associations, limited,' in the statute authorizing their formation,—the act of June 2, 1874, p. 271. Mr. Brightly, in his Digest, designates them as 'joint-stock companies.' Chief Justice Mercur, in the case of Coal Co. v. Rogers, 108 Pa. St. 147, says it may not be improper to call such an association a 'quasi corporation'; and Justice Williams, in Hill v. Stetler, 127 Pa. St. 161, 17 Atl. 887, calls them 'joint-stock associations,'

having some of the characteristics of a partnership, and some of a corporation." "The chief point of difference between them is that, while the corporation cannot refuse to permit a transfer on its books of shares of its stock to any purchaser thereof, a partnership association, limited, can except according to its rules."

In Stevens v. Ball Club, 142 Pa. St. 52–61, 21 Atl. 798, the court, in speaking of the Ball Club, said:

"The association was organized under the act of 1874, providing for the creation of limited partnerships. Such associations were referred to in Coal Co. v. Rogers, 108 Pa. St. 147, as quasi corporations. They are certainly artificial bodies, not natural persons."

These decisions are not overruled or criticised in Carter v. Oil Co., heretofore cited. We do not therefore agree with counsel for plaintiff in error that the supreme court of Pennsylvania has determined that such associations are not corporations; on the contrary, the corporate character of the organization is most distinctly recognized, though distinguished from the ordinary corporation provided for by other general statutes. "A new artificial person," organized under a statute, and empowered thereby to contract, hold, and convey property, sue and be sued, as such, is a corporation, and can be nothing else. In addition to the recognition of these associations as corporations of a peculiar character by the Pennsylvania court, we may add the pregnant circumstance that section 13 of article 16 of the state constitution provides as follows:

"The term 'corporations,' as used in this article, shall be construed to include all joint-stock companies or associations having any of the powers or privileges of corporations not possessed by individuals or partnerships."

Article 16 is devoted to the subject of private corporations and their regulation.

But does the existence of the dilectus personarum take from the body possessing it the character of a corporation, if it possesses those attributes which, by general consent, distinguish a corporation from a mere voluntary association? The general and well-settled rule is that, in the absence of statutory authority, a corporation may not make the transfer of shares dependent upon the discretion of the corporation, its officers or agents. They may by reasonable rule regulate such transfer, but they cannot prohibit. Mor. Priv. Corp. §§ 164, 165. But that this power may be conferred by the charter is equally well settled. Id., and authorities cited; Lewell, Stocks, § 31. This privilege of the dilectus personarum, while unusual in corporations for profit, is a very common provision in the charters of companies not for profits, such as clubs, boards of trade, fraternal societies, educational and charitable associations. Joint-stock companies have no invariable character. Sometimes they are incorporated, and sometimes they are not. The test is the attributes conferred by the statute under which they are organized. Mor. Priv. Corp. § 6. Certain express companies, widely known in this county as joint-stock companies, have been held not to be corporations, within the meaning of local taxing laws.

The case of People v. Coleman, 133 N. Y. 279, 31 N. E. 96, is interesting as showing the history and legislative origin of certain of these companies. The case only involved the question as

86 F.—38

to whether there was a legislative or practical distinction between joint-stock associations and corporations organized under the law of New York, and whether the capital of a joint-stock company was taxable under a New York statute, taxing the capital stock of corporations. The court refers to People v. Wemple, 117 N. Y. 136, 22 N. E. 1046, and says that case "shows very forcibly how almost the full measure of corporate attributes has, by legislative enactment, been bestowed upon joint-stock associations until the difference, *if there be one, is obscure, elusive, and difficult to see and describe.*" (The italics are ours.)

In endeavoring to discover whether any difference remained, the New York court, speaking through Finch, J., said:

"But I think there was an original and inherent difference between the corporate and joint-stock companies known to our law which legislation has somewhat obscured, but has not destroyed, and that difference is the one pointed out by the learned counsel for the respondent, and which impresses me as logical and well supported by authority. It is that the creation of the corporation merges in the artificial body, and drowns in it the individual rights and liabilities of the members, while the organization of a joint-stock company leaves the individual rights and liabilities unimpaired and in full force. The idea was expressed in Supervisors of Niagara v. People, 7 Hill, 512, and in Gifford v. Livingston, 2 Denio, 380, by the statement that the corporators lost their individuality, and merged their individual characters into one artificial existence; and upon these authorities a corporation is defined on behalf of the respondents to be 'an artificial person, created by the sovereign from natural persons, and in which artificial person the natural persons of which it is composed become merged and nonexistent.' I am conscious that legal definitions invite and provoke criticism, because the instances are rare in which they prove to be perfectly accurate; and yet this one offered to us may be accepted if it successfully bears some sufficient test. In putting it on trial, we may take the nature of the individual liability of the corporators on the one hand, and of the associates on the other, for the debts contracted by their respective organizations, as a sufficient test of the difference between them, and contrast their nature and character. It is an essential and inherent characteristic of a corporation that it alone is primarily liable for its debts, because it alone contracts them, except as that natural and necessary consequence of its creation is modified in the act of its creation by some explicit command of the statute which either imposes an express liability upon the corporators in the nature of a penalty, or affirmatively retains and preserves what would have been the common-law liability of the members from the destruction involved in the corporate creation. In other words, the individual liability of the members, as it would have existed at common law, is lost by their creation into a corporation, and exists thereafter only by force of the statute, upon some new and modifying conditions, to some partial or changed extent, and so far preventing, by the intervention of an express command, the total destruction of individual liabilities which otherwise would flow from the inherent effect of the corporate creation. * * * Exactly the opposite is true of joint-stock companies. Their formation destroys no part or portion of their common-law liability for the debts contracted. Permission to sue their president or treasurer is only a convenient mode of enforcing that liability, but in no manner creates or saves it. * * * We may thus see upon what the legislative intent to preserve them as separate and distinct is founded, and what distinguishing characteristics remain. The formation of the one involves the merging and destruction of the common-law liability of the members for the debts, and requires the substitution of a new or retention of the old liability by an affirmative enactment, which avoids the inherent effect of the corporate creation. In the other the common-law liability remains unchanged and unimpaired, and needing no statutory intervention to preserve or restore it. The debt of the corporation is its debt, and not that of its members. The debt of the joint-stock company is the debt of the associates, however enforced. The creation of the corporation merges and drowns the liability of its corporators. The creation of the stock

company leaves unharmed and unchanged the liability of the associates. The one derives its existence from the contract of individuals; the other from the sovereignty of the state. The two are alike, but not the same. More or less, they crowd upon and overlap each other, but without losing their identity; and so, while we cannot say that the joint-stock company is a corporation, we can say, as we did say in Van Aerman v. Bleistein, 102 N. Y. 360, 7 N. E. 537, that a joint-stock company is a partnership, with some of the powers of a corporation. Beyond that we do not think it is our duty to go."

If the nonliability of the members for the collection of debts be in fact a test of a corporation, then these Pennsylvania companies are clearly corporations under this authority. But we cannot be supposed to concede this. In Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566–575, the fact of the liability for company debts of the members of the Liverpool Insurance Company was held to be no sufficient test of the corporate character of that joint-stock association. Justice Miller, as to this, said:

"To this view it is objected that the association is nothing but a partnership, because its members are liable individually for the debts of the company. But, however the law on this subject may be in England, it is quite certain that the principle of personal liability of the shareholders attaches to a very large proportion of the corporations of this country, and it is a principle which has warm advocates for its universal application when the organization is for pecuniary gain."

The Massachusetts court is cited as holding that these Pennsylvania associations are not corporations, and could not, therefore, be sued in Massachusetts as such. Edwards v. Gasoline Works, 168 Mass. 564, 47 N. E. 502. The case does so hold. But the decision is expressly rested upon the earlier Massachusetts cases holding that joint-stock companies organized under the law of that state were mere partnerships. Tappan v. Bailey, 4 Metc. (Mass.), 529; Tyrrell v. Washburn, 6 Allen, 466. "If," says Lathrop, J., delivering the opinion of the court, "the question were an open one in this commonwealth, it might well be held that such an association could be considered to have so many of the characteristics of a corporation that it might be treated as one." The court in that case express their unwillingness to adopt the views of the supreme court of the United States in Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566, and say that their own decision, reported in Oliver v. Insurance Co., 100 Mass. 531, and affirmed in that opinion, was rested upon the ground stated by Justice Bradley in his dissenting opinion. We have neither the disposition nor the freedom of the Massachusetts court in respect to the opinion of the supreme court in Liverpool Ins. Co. v. Massachusetts. The Youngstown Coke Company presents many more of the characteristic features of a corporation than did the Liverpool Insurance Company, and that case is an authority most strongly supporting our conclusion that it is a corporation. The same conclusion was reached in regard to another one of these Pennsylvania associations by Judge Lacombe, in Bushnell v. Park Bros. & Co., 46 Fed. 209. That case was subsequently affirmed by the court of appeals, in 9 C. C. A. 138, 60 Fed. 583, though this question seems to have been abandoned by the plaintiff in error, against whose protest the case had been removed from the state court. Our conclu-

sion, therefore, is that the Youngstown Coke Company is a corporation and a citizen of Pennsylvania, within the meaning of the jurisdictional requirement in respect to diversity of citizenship.

The invalidity of the contract which plaintiffs in error undertook to set up as an agreement under which the coke sued for had been received and used was res judicata. The record of the suit between the same parties from the circuit court of the United States for the Western district of Pennsylvania involved the invalidity of that very contract. It was in that suit decided that a contract not signed by two managers of such partnership association, and which involved a contract exceeding $500 in value, was not enforceable in law or equity, and that all persons dealing with companies organized under the Pennsylvania act of 1874 were bound to take notice of this limitation upon their powers. That suit was one in equity, begun by the plaintiff in error for the purpose of compelling a specific performance of that agreement, or having same so executed by two managers as that it might be enforceable at law. The bill averred that the contract had been signed and delivered by one manager, who was the general manager of the Youngstown Coke Company, and its treasurer, and that he had been duly authorized to make such contracts for the future delivery of coke. It also charged that the said company took the position that it was not bound by the contract in question, and was threatening to discontinue performance. The greater part of the evidence offered and excluded by the court below was evidence which had been heard on the trial of the former suit. There was no error in the ruling of the court that the validity of that contract could not be again litigated, and in excluding evidence which could not reasonably have any other effect. The opinion of Judge Atchison, who decided the former case, is reported in 39 Fed. 353.

But it is said that, if the contract was invalid, no recovery could be had by reason of any coke delivered thereunder. The contract was neither malum in se nor in any wise affected by public policy. It was simply an agreement not executed as required by the charter of the Pennsylvania Company. This action was not upon the contract, but in disaffirmance of it, and for the value of the coke actually received as for a conversion. The averment is that this was an invalid agreement,—a contract not binding upon either party. That, under color of this invalid and unenforceable agreement, the plaintiff had delivered and the defendant received the coke in quantity and at the time shown in the exhibit to the petition. The suit was upon a quantum meruit. It was not a suit upon or in affirmance of the agreement, but for a conversion, and in disaffirmance of a contract which bound neither party. To the extent that one party had received, retained, and used the property of the other, it is equitable and just that there should be compensation. The contract, not having been immoral or contrary to public policy, may be disaffirmed, and suit brought for the value of benefits which the other has received and retained thereunder. This is well settled. Parkersburg v. Brown, 106 U. S. 487–503, 1 Sup. Ct. 442; Pennsylvania Ry. Co. v. Keokuk & H. Bridge Co., 131 U.

S. 371–389, 9 Sup. Ct. 770; Day v. Buggy Co., 57 Mich. 146, 23 N. W. 628; Mor. Priv. Corp. §§ 714, 715. There being no error, the judgment must be affirmed.