# In re Application of the Peter Schoenhofen Brewing Company for Wholesale Liquor License.

*Liquor law—Discretion of court—License refused a foreign corporation.*

A foreign corporation, incorporated under the laws of another state, for the purpose of the manufacture and sale of beer of its own make, registered as a foreign corporation under the laws of Pennsylvania is not a citizen of Pennsylvania within the meaning of the constitution. It does not possess the qualification which entitles it to a license under the laws of Pennsylvania and there is no abuse of judicial discretion disclosed in the action of the license court in refusing an application for a license "for the reason that the applicant is a foreign corporation."

Argued May 5, 1898. Appeal, No. 7, April T., 1899, by Schoenhofen Brewing Company, from decree of Q. S. Allegheny Co., March Sess., 1898, No. 153, refusing application for a wholesale liquor license. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Application for liquor license. Before SLAGLE, J.

The facts sufficiently appear in the opinion of the court.

The court below refused the application assigning as reason,

" Refused for the reason that the applicant is a foreign corpora-tion."  Applicant appealed.

*Error assigned* was refusing the application for the license.

*Willis F. McCook*, for appellant.—The sole question on the record is, how is it disqualified to receive a license under the wholesale act of 1891, simply because it is a foreign corpora-tion ?

It may perhaps assist to a just conclusion to examine the qualifications of an applicant under our different liquor license acts.

The Act of March 31, 1856, P. L. 200, licensed the hotel or restaurant, i. e., the place where the liquor was sold.  It was called a " licensed house."

The Act of March 21, 1867, P. L. 509, amending the above act of 1856, speaks only of the " applicant " for license.  Here again no qualification of residence, domicil or citizenship is required of licensee.

The Act of April 3, 1872, P. L. 843, relating to Allegheny county, is next in time.  It provides in section 2 for the grant-ing of licenses " to citizens of the United States of temperate habits and good moral character."

We, of course, concede the right to any state to deny to a citizen or corporation of any other state the right to vend liquors granted to its own citizens.  This right is part of that police power and internal regulation which must belong to a state's dominion.  Such a right has been affirmed to the states in Bartemeyer v. Iowa, 85 U. S. 129, and Foster v. Kansas, 112 U. S. 201.  Our contention is that this commonwealth has not as yet seen fit to make such discrimination.

The language of this act of 1887, so far as it defines the per-sons entitled to license, is copied verbally into the present Act of June 9, 1891, P. L. 257.  It grew out of a decision of Pol-lard's, Nordstrom's and other petitions reported in 127 Pa., and other like decisions to the effect that the manner of granting wholesale licenses was still in many counties governed by the special statutes relating to such counties.

In another like case, where the license was refused to a foreign corporation, the judge sitting in the court this year has

expressed more extensively his reasons for refusing the application. They are based on expediency and public policy. He seems to have followed or closely coincided with the reasoning of Judge SIMONTON, of Dauphin county, in his decision on the application in the petition of the Pure Beer Brewing Company, 7 Dist. Rep. 233.

No paper-book or appearance for appellee.

OPINION BY SMITH, J., July 29, 1898:

In this case the license was refused "for the reason that the applicant is a foreign corporation." The application set forth, inter alia, "that the petitioner is a citizen of the United States," and "a corporation organized under the laws of Illionois for the purpose of the manufacture and sale of beer of its own make, and has its general office in the city of Chicago, and is registered as a foreign corporation under the laws of the State of Pennsylvania." Thus, the fact upon which the refusal is based, was conceded, and the only question presented to this court is whether the reason given is sufficient in law.

The jurisdiction of a state is coextensive with its territory; coextensive with its legislative powers. Its laws and judicial decrees are paramount over persons and property within this jurisdiction. But they have no extraterritorial force, and the legal presumption is that they were intended to operate within the limits of the state. "For all national purposes embraced by the Federal Constitution, the States and the citizens thereof are one, united under the same sovereign authority and governed by the same laws. In all other respects, the States are necessarily foreign to and independent of each other. Their constitutions and forms of government being, although republican, altogether different, as are their laws and institutions:" Buckner v. Finley, 2 Pet. 586 ; Hanley v. Donoghue, 116 U. S. 1. The federal constitution provides that: "The citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states:" Article 4, sec. 2. But it has repeatedly been held that a corporation is not a citizen within the meaning of this provision, and can exercise none of the functions or privileges conferred by its charter in any other state of the union, except by the comity and consent of the latter: Ins.

Co. v. Mass, 77 U. S. 566. As to the rights and liabilities of corporations in states, other than those of their own creation, it has been said in R. R. Co. v. Koontz, 104 U. S. 5: "An individual may, without asking permission of State authorities, do business where he pleases, and, if a citizen of one State, he is entitled to all the privileges and immunities of citizens of the several States: Const. art. IV. sec. 2. Not so with corporations. Their rights outside the State, under the authority of which they were created, depend primarily on their charters. If the charter allows it, they may exercise their chartered privileges and carry on their chartered business in any other State which, by express grant or by implication, permits them to do so. They have no absolute right of recognition in any other State than their own: Paul v. Virginia, 75 U. S. 168, and the State which recognizes them can impose such conditions on its recognition as it chooses, not inconsistent with the Constitution and laws of the United States. If they are recognized and permitted to do business without limitation, express or implied, they carry with them wherever they go all their chartered rights, and may claim all their chartered privileges which can be used away from their legal home. Their charters are the law of their existence and are taken wherever they go. By doing business away from their legal residence they do not change their citizenship, but simply extend the field of their operations. They reside at home, but do business abroad." The scope and meaning of this section have also been clearly and succinctly defined by the Supreme Court of the United States in the following language: "The privileges and immunities of citizens of the United States are privileges and immunities arising out of the nature and essential character of the national government, and granted or secured by the Constitution of the United States; the right to sell intoxicating liquors is not one of the rights growing out of such citizenship:" Giozza v. Tiernan, 148 U. S. 657. The foregoing principles, drawn from the decisions of the highest court in the land, have been reiterated and cogently summarized in the case of Kidd v. Pearson, 128 U. S. 1.

The right of a state to enact laws restricting the privilege of selling liquors within its own limits to the citizens thereof, has not been discussed by the federal Supreme Court, so far as I have been able to find. But the precise point was presented,

on appeal to the United States circuit court, in Kohn v. Melcher, 29 Federal Reporter, 433.  In this case the question came up under the provisions of the code of Iowa, whereby the right to make such sales by a nonresident of the state was denied by the county court.  On appeal, SHIRAS, J., delivering the opinion of the circuit court, said: " The principal question is whether the provisions of the statute restricting the right to sell liquors in Iowa to the citizens of the state are in violation of the federal constitution.  An impartial examination of the statute shows that the restrictions complained of were adopted, not for the purpose of securing an undue advantage to the citizens of the state, but for the purpose of preventing violations of the prohibitory laws of the state, and although, in effect, the citizens of other states as well as the larger part of the citizens of Iowa, are debarred from selling in Iowa, and in that sense commerce between the states may be affected, yet this is but an incidental result; and as the intent and purpose of the restrictions are within the police powers of the state, it cannot be held that the statute under consideration violates any of the provisions of the federal constitution."   The same question arose under a similar statute of the state of Nebraska, and the Supreme Court of that state, in Mette v. McGuckin, 18 Neb. 323, held the law to be free from objection on constitutional grounds.   This last case was affirmed by the Supreme Court of the United States, but has not been officially reported. If, therefore, the act under consideration expressly or by implication restricts the privilege of selling intoxicating liquors to persons domiciled in Pennsylvania, it is valid and binding, under the authorities cited.

An examination of the act of June 9, 1891, shows that it is clearly in the exercise of the undisputed police power of the state.  It does not contravene the federal constitution or laws and is not qualified or affected by them.  It is wholly domestic in purview and application, and relates only to persons and property within the state, to which it is presumed by law to apply.  Nothing in its language warrants the inference that it was intended to embrace persons or property beyond the jurisdiction of legislative power; while some of its provisions could be defeated by residence without the state.  It was manifestly intended for the protection and welfare of the citizens of the

commonwealth, and its enforcement for this purpose can best be attained when those who may be amenable to its penalties are wholly under the surveillance of the constabulary of the state.  We are of the opinion that it was not the legislative intent by this statute to license foreign corporations to engage in the sale of liquors in Pennsylvania.

It is stated in the petition that the appellant has been "registered as a foreign corporation under the laws of Pennsylvania;" and this, it is argued, gives it the status of a domestic corporation.  To this proposition we cannot assent.  Granting that it has been registered under the act of April 22, 1874, it has not thereby become a corporation of this state.  It remains a foreign corporation for all purposes, except the right to transact business here, and cannot by thus registering dispense with the further requisite of a license under the act of 1891 in order to engage in the business regulated by that act.  The act of 1874 does not extend or dispense with the particular qualifications necessary to engage in a business specially regulated by statute, such as the general insurance business or the sale of intoxicating liquors.  The authority to do this must be obtained in the manner provided by law, upon showing to the court all the necessary qualifications.  These are not possessed by foreign corporations.

However if the views herein expressed were not conclusive of the question involved, we are all of the opinion that there is no abuse of judicial discretion disclosed in the action of the license court.

The decree is affirmed.